No. 25-8013

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

STATE OF CALIFORNIA, *et al.*,
*Plaintiffs-Appellees*,

v.

UNITED STATES OF AMERICA, *et al.*,
*Defendants*,

v.

WESTERN STATES TRUCKING ASSOCIATION, INC. *et al.*,
*Proposed Defendants-Intervenors and Movant-Appellants*.

_____

**On Appeal from the U.S. District Court for the
Northern District of California**
No. 4:25-cv-04966-HSG

_____

**STATE OF CALIFORNIA ET AL.'S OPPOSITION TO
WESTERN STATES TRUCKING ASSOCIATION ET AL.'S
MOTION TO EXPEDITE AND CROSS-MOTION TO CONSOLIDATE
WITH RELATED APPEAL NO. 26-88**

_____

ROB BONTA
  *Attorney General of California*
ANNADEL A. ALMENDRAS
  *Senior Assistant Attorney General*
MYUNG J. PARK
  *Supervising Deputy Attorney*
  *General*

KATHERINE GAUMOND
CAITLAN MCLOON
M. ELAINE MECKENSTOCK
EMMANUELLE S. SOICHET
CECILIA D. SEGAL
  *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3545
  Fax: (415) 703-1107
  Email: cecilia.segal@doj.ca.gov
  *Attorneys for State of California*

*Additional appellees and counsel listed on signature pages*

January 15, 2026

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

BACKGROUND ........................................................................... 2

ARGUMENT ................................................................................ 7

    I.     WSTA and CIAQC Fail to Identify Any Good Cause to
          Deviate from the Set Schedule .................................................. 7

    II.    WSTA and CIAQC's Proposed Schedule Is Unworkable ...... 13

    III.   This Appeal Should Be Consolidated with Appeal
          No. 26-88 ................................................................................ 15

CONCLUSION ............................................................................. 17

# TABLE OF AUTHORITIES

**Page**

CASES

*Arizona v. California*
460 U.S. 605 (1983)......................................................................12

*California v. EPA*
No. 20-16606 (9th Cir. July 14, 2021)........................................11

*Club One Casino, Inc. v. Bernhardt*
959 F.3d 1142 (9th Cir. 2020) ....................................................14

*Gregorio T. By and Through Jose T. v. Wilson*
54 F.3d 599 (9th Cir. 1995) ........................................................16

*H.R. Ewell, Inc. et al. v. EPA*
No. 25-1475 (9th Cir. filed Mar. 7, 2025) ....................................5

*Judicial Watch, Inc. v. Logan*
No. 18-56102 (9th Cir. Nov. 19, 2018) ........................................11

*Kivalina Relocation Plan. Comm. v. Teck Cominco Alaska Inc.*
81 F. App'x 640 (9th Cir. Nov. 17, 2003)....................................12

*McConnell v. Blaine County*
No. 01-35611 (9th Cir. July 20, 2001)..........................................11

*Moreno v. City of Sacramento*
534 F.3d 1106 (9th Cir. 2008) ....................................................14

*Perry v. Proposition 8 Off. Proponents*
587 F.3d 947 (9th Cir. 2009) ........................................................9

*Preston Collection Inc. v. Youtsey*
No. 15-cv-607, 2020 WL 5362663 (D. Ariz. Aug. 24, 2020)....................14

*Smith v. L.A. Unified Sch. Dist.*
No. 14-55224 (9th Cir. June 17, 2015)..........................................11

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Stringfellow v. Concerned Neighbors in Action*
480 U.S. 370 (1987)..................................................................12

*Tanoh v. Dow Chem. Co.*
561 F.3d 945 (9th Cir. 2009) ...................................................15

*United States v. Hauser*
603 F.2d 94 (9th Cir. 1979) .....................................................15

*United States v. Oakland*
958 F.2d 300 (9th Cir. 1992) ...................................................11

*United States v. Washington*
573 F.2d 1121 (9th Cir. 1978) .................................................15

*W. States Trucking Ass'n, Inc. v. EPA*
No. 23-1143 (D.C. Cir. filed June 5, 2023) ...............................5

STATUTES AND REGULATIONS

42 U.S.C.
§ 7507...................................................................................3
§ 7543(b)..............................................................................2
§ 7607(b)..............................................................................5

Cal. Code Regs., title 13
§ 1956.8(a)(2)(C)..................................................................4
§ 1956.8(a)(2)(D)..................................................................4
§ 1962.4(b)...........................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

COURT RULES

Fed. R. App. P.
    3.................................................................................................15
    31(a)(1) ........................................................................................13

Ninth Circuit Rule 27-12 .......................................................7, 8, 11

Ninth Circuit Rule 31-2.1(a) ...........................................................14

Ninth Circuit Rule 32-2....................................................................16


OTHER AUTHORITIES

88 Fed. Reg. 20,688 (Apr. 6, 2023) ..................................................3

90 Fed. Reg. 642 (Jan. 6, 2025) .......................................................3

90 Fed. Reg. 643 (Jan. 6, 2025) .......................................................3

7C Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 1920 (3d ed. 2008)..................................................12

**INTRODUCTION**

Appellants Western States Trucking Association (WSTA) and Construction Industry Air Quality Coalition (CIAQC) moved to intervene in the case below as the 20th and 21st proposed defendant-intervenors. Plaintiffs-Appellees State of California et al. (hereinafter Plaintiff States) successfully argued that WSTA lacked a protectable interest that could be impaired by disposition of the case; that, in any event, the federal defendants adequately represented any such interest; and that WSTA's and CIAQC's participation as intervenors would unduly burden and delay the litigation. The district court denied WSTA and CIAQC's motion to intervene as defendants (as well as four other motions by proposed defendant-intervenors and a motion by a proposed plaintiff-intervenor) on December 2, 2025, and extended the time for them to participate as amici curiae in support of the federal defendants' motion to dismiss.

Declining such participation, WSTA and CIAQC now seek to expedite briefing on their appeal of the district court's order. But their proffered rationales—chiefly, that they would like to participate as a party in briefing currently underway on the federal government's motion to dismiss and that a condensed schedule would serve judicial economy—lack merit and do not constitute good cause for expedited review. Critically, even if this appeal is briefed and ready for decision on the expedited schedule WSTA and CIAQC request,

briefing on the federal government's motion to dismiss below will have already concluded. And contrary to WSTA and CIAQC's assertions, an expedited schedule would in fact *undermine* judicial economy and prejudice Plaintiff States.

Plaintiff States also cross-move to consolidate this appeal with an appeal filed by a second set of proposed defendant-intervenors, American Free Enterprise Chamber of Commerce and twelve corn-growing and -producing associations (collectively, AmFree). Both appeals are taken from the same district court order and involve substantially similar facts and legal issues, and thus easily satisfy the test for consolidation. Counsel for WSTA and CIAQC represent that they oppose this cross-motion and plan to file an opposition.

WSTA and CIAQC's motion to expedite should be denied, and Plaintiff States' motion to consolidate this appeal with AmFree's appeal should be granted.

## BACKGROUND

On June 12, 2025, Plaintiff States—a group of eleven states, led by California—sued the federal government over its unprecedented attempt, absent administrative or judicial process, to annul three waivers of Clean Air Act preemption that the U.S. Environmental Protection Agency (EPA) granted to California under Section 209(b) of the Act, 42 U.S.C. § 7543(b). Those waivers authorized California to adopt and enforce recent amendments to its vehicle emission program. D.Ct. Dkt. 157, ¶¶ 4-13. California has had such a program for

more than 60 years and has received the requisite preemption waivers for amendments to that program since Congress created the waiver provision in 1967. *Id.* ¶¶ 33-42.

Each of the three waivers targeted by the federal government's actions permits California to enforce specific amendments to its regulatory program, adopted to reduce harmful pollution and protect public health and welfare. The waivers also allow other States to adopt and enforce California's regulations as their own. 42 U.S.C. § 7507. The first waiver granted by EPA authorizes the Advanced Clean Trucks regulation, 88 Fed. Reg. 20,688 (Apr. 6, 2023), which requires gradual increases in sales of medium- and heavy-duty zero-emission vehicles in California beginning with model year 2024. D.Ct. Dkt. 157, ¶ 45. The second and third waivers granted by EPA authorize the Advanced Clean Cars II and Omnibus regulations, respectively. 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025). Advanced Clean Cars II gradually strengthens California's longstanding emission standards for light-duty vehicles (passenger cars and light trucks), including the State's zero-emission-vehicle sales requirements and the exhaust emission standards for criteria pollutants, requiring reductions in smog-forming oxides of nitrogen (NOx) and particulate matter. D.Ct. Dkt. 157, ¶ 44. The Omnibus regulation likewise strengthens longstanding state emission standards, requiring substantial reductions in NOx exhaust emissions from new medium- and

heavy-duty vehicles. *Id.* ¶ 46.[1]

The unlawful targeting of the three waivers began months (or, in the case of the Advanced Clean Trucks amendment, years) after they were granted. EPA reversed the view it had consistently held for decades—shared by the Government Accountability Office—that the waivers were adjudications not subject to the Congressional Review Act, and suddenly declared instead, without explanation, that the waivers were "rules" within the meaning of that Act. D.Ct. Dkt. 157, ¶¶ 66-67, 69-71, 74-78. Relying on EPA's misinterpretation, Congress enacted joint resolutions that purport to invalidate the three waivers. *Id.* ¶¶ 86, 94-96, 108, 111. The President signed the resolutions on June 12, 2025. *Id.* ¶ 113.

Plaintiff States promptly sued the United States, seeking, *inter alia*, to have the congressional resolutions declared unconstitutional for violation of separation of powers and federalism principles. *Id.* ¶¶ 149-169 & Prayer for Relief. Soon thereafter, the Zero Emission Transportation Association (ZETA) filed an unopposed motion to intervene as a plaintiff. D.Ct. Dkt. 182 at 1, 8 & n.1.

---

[1] WSTA and CIAQC characterize these regulations as "electric-vehicle mandate[s]." Mot. 2. But California's zero-emission vehicle requirements are technology neutral, so other vehicles—e.g., hydrogen or other future technologies—can satisfy them (along with electric vehicles). *E.g.*, Cal. Code Regs., tit. 13, § 1962.4(b).  Moreover, many of these regulations only apply to *internal combustion* vehicles, requiring them to reduce their emissions. *See id.* § 1956.8(a)(2)(C), (a)(2)(D).

Texas and several sets of trade groups, including WSTA and CIAQC, then filed five motions to intervene as defendants. *Id.* at 1 & n.1. Plaintiff States opposed each motion. *See* D.Ct. Dkt. 145, at 1. Among other things, Plaintiff States argued that the proposed defendant-intervenors' alleged interests related to the lawfulness of EPA's decision to grant the waivers and not the congressional resolutions at issue in the case, and thus were neither sufficiently related to, nor impaired by, Plaintiff States' claims. *Id.* at 4-6.[2] Plaintiff States also argued that the proposed defendant-intervenors' participation as parties risked prejudicing Plaintiff States by injecting collateral issues into the case and introducing duplication and delay. D.Ct. Dkt. 145, at 9-12. Plaintiff States requested that the court deny all five motions and permit the proposed defendant-intervenors to instead present their views on the case as amici. *Id.* at 11-12. In the alternative, Plaintiff States asked the court to exercise its discretion to impose reasonable case management conditions on the proposed defendant-intervenors' participation, such as joint briefing requirements and page limits, to mitigate the risk of prejudice and ensure the case proceeded efficiently. *Id.* at 12-13.

---

[2] The Clean Air Act provides for judicial review of EPA's waiver decisions. 42 U.S.C. § 7607(b). In fact, many of the proposed defendant-intervenors, including WSTA and CIAQC, have filed such challenges. *E.g.*, *W. States Trucking Ass'n, Inc. v. EPA*, No. 23-1143 (D.C. Cir. filed June 5, 2023); *H.R. Ewell, Inc. et al. v. EPA*, No. 25-1475 (9th Cir. filed Mar. 7, 2025). Those cases remain pending.

On November 17, 2025, pursuant to a negotiated briefing schedule, the United States filed a motion to dismiss the operative complaint. D.Ct. Dkt. 184 at 1. The schedule also contemplated the filing of amicus briefs; four groups of entities—none of them proposed defendant-intervenors—moved for leave to file such briefs in support of the United States. *Id.* Briefing on the United States' motion will be complete by February 2, 2026, with a hearing set for February 19, 2026. *Id.* at 2, 7.

With their motions to intervene still pending, three sets of proposed defendant-intervenors, including WSTA and CIAQC, filed motions for leave to file motions to dismiss. *See* D.Ct. Dkt. 182 at 1. Plaintiff States filed an opposition to the first-filed motion on December 1, 2025, arguing that the proposed defendant-intervenors failed to demonstrate a right to participate as parties in the case—much less at the motion to dismiss stage; that their participation would be prejudicial and duplicative; and that, even if they were allowed to participate, their proposed motion to dismiss was premature given the case management conditions Plaintiff States had requested. D.Ct. Dkt. 181 at 2-3.

On December 2, 2025, the district court denied all motions to intervene (and, by extension, the motions for leave to file motions to dismiss). D.Ct. Dkt. 182 at 9. Relevant here, the court denied intervention as of right because the proposed defendant-intervenors shared the same ultimate objective as the federal

government and failed to overcome the presumption that their interests would be adequately represented. *Id.* at 5-7. The court denied permissive intervention because the "myriad" proposed defendant-intervenors "would create inefficiencies and unduly delay the case without meaningfully advancing the substance of the matter." *Id.* at 8. The court also expressed concern that the proposed defendant-intervenors would improperly seek to introduce collateral issues into the case. *Id.* at 7 n.5.[3]

Recognizing that the stipulated deadline for amicus briefs in support of the United States' motion to dismiss had already passed, and "to ensure an equal opportunity to be heard," the court extended the deadline for proposed defendant-intervenors to file such briefs to December 12, 2025. *Id.* at 9.

WSTA and CIAQC chose not to submit an amicus brief and lodged this appeal instead.

## ARGUMENT

### I. WSTA AND CIAQC FAIL TO IDENTIFY ANY GOOD CAUSE TO DEVIATE FROM THE SET SCHEDULE

WSTA and CIAQC fail to establish "good cause" for their motion to expedite—indeed, they do not even acknowledge that standard. Circuit Rule 27-12.

---

[3] The court denied ZETA's motion to intervene as plaintiff based on adequate representation and efficiency grounds. *Id.* at 8-9.

Rather, WSTA and CIAQC contend that expedited review will avoid prejudice to their interests and serve judicial economy. Mot. 5-6. That is incorrect, and in fact, expedited review will create *more* duplication, not less. But even crediting WSTA and CIAQC's contentions, each rationale falls far short of the showing needed to justify expedited review—for example, that "irreparable harm may occur or the appeal may become moot." Circuit Rule 27-12.

**1.** WSTA and CIAQC claim prejudice because they wish to raise certain arguments in pleading-stage briefing currently occurring at the district court or at the February 19, 2026, hearing on the United States' motion to dismiss. Mot. 5-6. That claim is meritless.

To begin, the relief requested here—expedited appellate briefing—will not redress WSTA and CIAQC's purported harm. Even on the requested schedule, the last brief in this appeal would be filed on February 6, Mot. 7—*after* briefing at the district court is already complete, and less than two weeks before the district court hearing, *supra* p. 6. This Court might not even hear argument, much less decide the matter, before the district court hearing. And even if this Court did rush through argument and to decision in twelve days, WSTA and CIAQC assume both that they would receive a favorable decision on the merits and that they would be entitled to provide argument at the hearing below—despite declining to participate

8

in the briefing as amici. *See infra* pp. 12-13 (intervenor has no inherent right to participate in a particular stage of a case).

Regardless, WSTA and CIAQC face no serious (let alone irreparable) harm because their interests in filing a motion to dismiss are adequately represented by the federal government. D.Ct. Dkt. 182 at 6-7. Indeed, the district court found that WSTA and CIAQC's proposed motion to dismiss "mirror[ed]" the federal defendants' brief and that their arguments were neither "unique" nor "tailored to their specific economic interests." D.Ct. Dkt. 182 at 6-7; *see also Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) ("[T]he use of different arguments as a matter of litigation judgment is not inadequate representation *per se*." (citation omitted)).

WSTA and CIAQC suggest that, in their absence, certain "bells may be rung that cannot be unrung." Mot. 6. But all they point to is a legal argument they seek to raise (and that four sets of amici *have* raised): that preemption waivers are rules, not adjudications. *Id.* at 3; *see* D.Ct. Dkt. 177-1 at 9-13; D.Ct. Dkt. 179-1 at 4-12; D.Ct. Dkt. 185-1 at 7-10; D.Ct. Dkt. 186-1 at 24-25. That is an argument WSTA and CIAQC can raise in later stages of the case, assuming they succeed in their appeal. It is also an argument they could have raised in an amicus brief in support of the United States' motion to dismiss, as the district court expressly invited (and as other amici did). D.Ct. Dkt. 182 at 9. WSTA and CIAQC fail to explain why

9

participating as amici, instead of as parties, at this early stage of the case would not have sufficiently protected their claimed interests. Their decision not to avail themselves of that opportunity (twice) cannot now serve as a basis for expediting this appeal.

WSTA and CIAQC are also incorrect that they have "no way to protect" their interests outside of this litigation. Mot. 5-6. Those interests lie in the legality of the waiver decisions themselves, not in the congressional resolutions purporting to disapprove them that are the basis of the district court suit. *See id.* at 3 (complaining WSTA and CIAQC's members "will be harmed by California's regulations"); D.Ct. Dkt. 182 at 5-6 ("[A]rguments that Proposed Intervenors may face distinct challenges if the Plaintiff States' strict emissions standards are eventually implemented are ancillary to the actual issues raised in this case."). And the Clean Air Act provides a separate mechanism for challenging such waiver decisions. *Supra* p. 5 n.2. In fact, WSTA and CIAQC admit that they have already filed a petition for review of EPA's waiver for the Advanced Clean Trucks amendment to California's regulatory program. Mot. 3; *see also id.* (asserting WSTA and CIAQC seek "to protect their interests in their D.C. Circuit" challenge). They neglect to mention that they have also filed a petition for review of EPA's waiver of the Omnibus amendment in this Court. *See supra* p. 5 n.2 (citing *H.R. Ewell*, No. 25-1475).

10

That this Court has expedited other appeals of intervention denials is not a substitute for WSTA and CIAQC's failure to demonstrate good cause. In *United States v. Oakland*, the Court confirmed that interlocutory appeals from intervention denials are available, and encouraged such appeals rather than "wait[ing] until after the case is decided" and risking that this Court would lack jurisdiction. 958 F.2d 300, 302 (9th Cir. 1992); *cf.* Circuit Rule 27-12 (examples of good cause include situations in which the "appeal may become moot").[4] Far from establishing that expedited briefing in these appeals should be "routine[]," Mot. 5, *Oakland* underscores that an appellant must still demonstrate good cause for such a request; the mere fact of the intervention denial alone is insufficient. Indeed, examples of this Court *denying* motions to expedite appeals of intervention denials abound. *See, e.g.*, *California v. EPA*, No. 20-16606 (9th Cir. July 14, 2021), Dkt. 47; *Judicial Watch, Inc. v. Logan*, No. 18-56102 (9th Cir. Nov. 19, 2018), Dkt. 26; *Smith v. L.A. Unified Sch. Dist.*, No. 14-55224 (9th Cir. June 17, 2015), Dkt. 56; *McConnell v. Blaine County*, No. 01-35611 (9th Cir. July 20, 2001), Dkt. 6. WSTA and CIAQC's remaining authorities, in which the Court refers only in passing to the fact that it had earlier expedited each appeal, are of no help, either. *See* Mot. 5.

---

[4] WSTA and CIAQC do not allege here that proceeding on a normal schedule would risk mootness or divest this Court of jurisdiction.

While expedited review may have been justified in those cases—on different, unspecified facts—that is not enough to justify expedited briefing here.

**2.** WSTA and CIAQC's reliance on judicial economy also fails. Their assertion that expedited briefing would be "more efficient" is premised on a right to participate as a party in the early stages of the case below. *See* Mot. 6-7 (expressing intent to "relitigate" any hearings "that take place in [WSTA and CIAQC's] absence"). But nowhere do WSTA and CIAQC establish such a right.

Intervenors join a suit "subject to the proceedings that have occurred prior to [their] intervention." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1920 (3d ed. 2008) (citation omitted); *see also Arizona v. California*, 460 U.S. 605, 615 (1983) ("[P]ermission to intervene does not carry with it the right to litigate matters already determined in the case, unless those matters would otherwise be subject to reconsideration."). Courts also have broad discretion to impose conditions on intervention, *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382-83 & n.2 (1987) (Brennan, J., concurring in part and concurring in the judgment) (citing Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment), including by restricting an intervenor's participation to a particular stage of the case. *See, e.g., Kivalina Relocation Plan. Comm. v. Teck Cominco Alaska Inc.*, 81 F. App'x 640, 641 (9th Cir. Nov. 17, 2003) (mem.) (limiting intervention as of right to remedy stage). Thus, even if

12

WSTA and CIAQC were to succeed on their appeal here and be admitted to the case below, their participation may be reasonably limited to whatever proceedings follow resolution of the United States' already filed motion to dismiss (rendering WSTA and CIAQC's purported efficiency gains illusory).

In short, an expedited schedule will not "prevent[] duplicative proceedings," Mot. 6, and in fact will have the opposite effect. As described above, the district court denied six separate motions to intervene. *Supra* p. 6. To date, only one other group of proposed intervenors (AmFree) has appealed; that appeal is proceeding on a non-expedited timeframe. The deadline for the remaining proposed intervenors to appeal is February 2, 2026. If granted, an expedited schedule in this appeal would call for briefing to be completed by February 6 and would thus risk multiple appeals of the *same* district court order proceeding on separate tracks, requiring separate—but substantially overlapping—briefing. *See infra* Sec. III (moving to consolidate existing appeals (on non-expedited timeframe) for this reason).

## II. WSTA AND CIAQC'S PROPOSED SCHEDULE IS UNWORKABLE

WSTA and CIAQC's motion to expedite should be denied for the additional reason that their proposed schedule is unreasonable.

WSTA and CIAQC propose a schedule that allows only two weeks for Plaintiff States' answering brief—less than half the time typically allowed. Fed. R. App. P. 31(a)(1). Counsel for Plaintiff States have preexisting deadlines and work

demands during the briefing period WSTA and CIAQC propose—including in the case below—that render the schedule unworkable. Plaintiff States must also coordinate lengthy, multi-step review and approval processes across eleven co-party states, necessitating a longer briefing interval.[5]

WSTA and CIAQC dismiss these concerns because the issues on appeal "have already been researched and briefed." Mot. 7. But that will nearly *always* be true of an appeal. *Club One Casino, Inc. v. Bernhardt*, 959 F.3d 1142, 1153 (9th Cir. 2020) (Court "generally will not consider arguments raised for the first time on appeal" absent "exceptional circumstances"). And effective appellate advocacy involves more than just "[c]utting and pasting" from district court briefs. *Cf. Preston Collection Inc. v. Youtsey*, No. 15-cv-607, 2020 WL 5362663, at *2 (D. Ariz. Aug. 24, 2020); *cf. also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[A] competent lawyer won't rely entirely on last year's, or even last month's, research."). WSTA and CIAQC's attempt to litigate this appeal on a short fuse would unfairly prejudice Plaintiff States and should be rejected.

---

[5] WSTA and CIAQC filed their opening brief on January 15, 2026, Dkt. 6, well before the February 2, 2026, due date set by the Court, Dkt. 2. That early filing does "not advance the due date" for Plaintiff States' answering brief absent an order from this Court stating otherwise. Circuit Rule 31-2.1(a).

14

## III.  THIS APPEAL SHOULD BE CONSOLIDATED WITH APPEAL NO. 26-88

Both this appeal and AmFree's appeal (Case No. 26-88) should be consolidated because they involve the same district court order and substantially similar factual and legal issues.

"Consolidation under Federal Rule of Appellate Procedure 3(b) may be ordered where the court in its discretion deems it appropriate and in the interests of justice." *United States v. Washington*, 573 F.2d 1121, 1123 (9th Cir. 1978); *see also* Fed. R. App. P. 3 advisory committee's note to 1967 adoption (purpose of provision is "to encourage consolidation of appeals whenever feasible"). Here, the legal issues raised in the two appeals "are precisely the same." *United States v. Hauser*, 603 F.2d 94, 95 n.1 (9th Cir. 1979). Indeed, the district court ruled on the proposed defendant-intervenors' motions to intervene in a single order due to the "similarity in arguments" across them. D.Ct. Dkt. 182 at 4. Consolidation would therefore promote the interests of justice and conserve the Court's and the parties' resources by reducing duplicative briefing and avoiding the risk of inconsistent decisions. The possibility that four more groups of proposed intervenors might yet still file appeals of the same district court order underscores the benefits of consolidation. Such additional appeals should also be consolidated. *See Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 n.3 (9th Cir. 2009) (consolidating appeals *sua sponte*).

15

Should the Court consolidate these appeals, Plaintiff States respectfully request that the Court solicit briefing proposals from the parties specifying the number and length of briefs for each side. Doing so could further reduce duplication by, for example, encouraging the appellants to file jointly. *See Gregorio T. By and Through Jose T. v. Wilson*, 54 F.3d 599, 600 (9th Cir. 1995) (consolidating appeals and directing appellants to file "one consolidated opening brief"); Circuit Rule 32-2 advisory committee's note (indicating that rule automatically allowing for longer joint briefs is meant to "encourage[]" such briefs "to avoid burdening the Court with repetitive presentations of common facts and issues"). Indeed, the inefficiencies posed by the proposed defendant-intervenors filing multiple briefs "contain[ing] overlapping arguments and case law"—and their "reticence about coordinating together and limiting the" length of those briefs—informed the district court's decision to deny them permissive intervention in the first place. D.Ct. Dkt. 182 at 8.[6]

---

[6] These consolidated appeals should proceed on a non-expedited briefing schedule. *See supra* Secs. I & II. AmFree has not moved to expedite its appeal. But even if it had, its motion would fail for the same reasons as WSTA and CIAQC's. Briefing two appeals on an expedited schedule would also exacerbate the prejudice to Plaintiff States. Though WSTA, CIAQC, and AmFree are likely to raise overlapping arguments (whether in one brief or two), "comb[ing] through" the brief(s) to account for and respond to any differences in argument will require additional time and effort. *See* D.Ct. Dkt. No. 182 at 8.

16

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellee States respectfully request that the Court deny WSTA and CIAQC's motion to expedite and grant Plaintiff-Appellee States' motion to consolidate.

Dated: January 15, 2026

Respectfully submitted,

*s/ Cecilia D. Segal*
ROB BONTA
*Attorney General of California*
ANNADEL A. ALMENDRAS
*Senior Assistant Attorney General*
MYUNG J. PARK
*Supervising Deputy Attorney General*
CECILIA D. SEGAL
*Deputy Attorney General*

*Attorneys for State of California*

**PHILIP J. WEISER**
*Attorney General for the State of Colorado*

*/s/ Carrie Noteboom*
CARRIE NOTEBOOM
Assistant Deputy Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6285
Carrie.noteboom@coag.gov

**KATHLEEN JENNINGS**
*Attorney General of the State of Delaware*

By: /s/ *Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
RALPH K. DURSTEIN III
VANESSA L. KASSAB
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

17

**ANDREA JOY CAMPBELL**
*Attorney General for the*
*Commonwealth of Massachusetts*

*/s/ Seth Schofield*
SETH SCHOFIELD
Senior Appellate Counsel
JON WHITNEY
Special Assistant Attorney General
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Flr.
Boston, Mass. 02108
(617) 727-2200
seth.schofield@mass.gov
jon.whitney@mass.gov

**RAÚL TORREZ**
*Attorney General for the State of*
*New Mexico*

*/s/ William Grantham*
WILLIAM GRANTHAM
Assistant Attorney General
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 717-3520
wgrantham@nmdoj.gov

**MATTHEW J. PLATKIN**
*Attorney General for the State of*
*New Jersey*

*/s/ Lisa J. Morelli*
LISA J. MORELLI
Deputy Attorney General
New Jersey Division of Law
25 Market Street
Trenton, New Jersey 08625
(609) 900-0782
Lisa.Morelli@law.njoag.gov

**LETITIA JAMES**
*Attorney General for the State of*
*New York*

*/s/ Ashley M. Gregor*
ASHLEY M. GREGOR
Assistant Attorney General
Environmental Protection Bureau
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8454
ashley.gregor@ag.ny.gov

19

**DAN RAYFIELD**
*Attorney General for the State of Oregon*

*/s/ Paul Garrahan*
PAUL GARRAHAN
Sr. Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

**CHARITY R. CLARK**
*Attorney General for the State of Vermont*

*/s/ Hannah Yindra*
HANNAH YINDRA
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

**PETER F. NERONHA**
*Attorney General for the State of Rhode Island*

*/s/ Nicholas M. Vaz*
NICHOLAS M. VAZ
Special Assistant Attorney General
Office of the Attorney General
Chief, Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

**NICHOLAS W. BROWN**
*Attorney General for the State of Washington*

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

OK2025401237
9207705992077059

20

**STATEMENT OF RELATED CASES**
**PURSUANT TO CIRCUIT RULE 28-2.6**

**9th Cir. Case Number:** 25-8013

The undersigned attorney or self-represented party states the following:

[  ]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[X]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

*State of California, et al. v. American Free Enterprise Chamber of Commerce, et al.*, No. 26-88 (filed December 31, 2025), arising out of the same case in the district court (and from the same district court order)

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(a) and Ninth Circuit Rules 27-1(1)(d) and 32-3(2) because, excluding the material exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,781 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.