**Nos. 25-8013, 26-88, 26-497, 26-525**

---

# In the United States Court of Appeals For the Ninth Circuit

---

**STATE OF CALIFORNIA, ET AL.,**
*Plaintiffs-Appellees,*

**v.**

**UNITED STATES OF AMERICA, ET AL.,**
*Defendants,*

**WESTERN STATES TRUCKING ASSOCIATION, ET AL.,**
*Movant-Intervenor Defendants-Appellants*

---

On Appeal from the U.S. District Court
for the Northern District of California
4:25-cv-04966-HSG; Hon. Haywood S. Gilliam, Jr.

---

**JOINT OPENING BRIEF FOR APPELLANTS
IN CASE NOS. 26-88, 26-497, 26-525**

---

Raymond B. Ludwiszewski
Rachel Levick
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
Tel.: (202) 955-8500

Michael Buschbacher
James R. Conde
Laura B. Ruppalt
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
 Suite 900
Washington, D.C. 20006
Tel.: (202) 955-0620

*\*Additional counsel listed inside*

Sean Howell
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
 Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8355

Katherine C. Yarger
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Tel.: (512) 693-8350

Steven P. Lehotsky
Michael B. Schon
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW
 Suite 700
Washington, DC 20001
Tel.: (512) 693-8350

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies as follows:

The Alliance for Automotive Innovation is a non-profit trade association. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The American Free Enterprise Chamber of Commerce is a business association. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The American Fuel & Petrochemical Manufacturers is a non-profit trade association. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The American Petroleum Institute is a non-profit trade association. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Illinois Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

i

The Indiana Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Iowa Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Kansas Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Kentucky Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Michigan Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Missouri Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Nebraska Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Tennessee Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Texas Corn Producers is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The Wisconsin Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The National Association of Convenience Stores is a non-profit trade association. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The National Automobile Dealers Association is a non-profit trade association. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

iii

The National Corn Growers Association is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

February 25, 2026

Respectfully Submitted,

/s/ *Rachel Levick*
Raymond B. Ludwiszewski
Rachel Levick
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
Tel.: (202) 955-8500
Fax: (202) 467-0539
rludwiszewski@gibsondunn.com
rlevick@gibsondunn.com

Sean Howell
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
 Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8355
Fax: (415) 801-7364
showell@gibsondunn.com

*Counsel for The Alliance for Automotive Innovation and The National Automobile Dealers Association*

/s/ *Michael Buschbacher*
Michael Buschbacher
James R. Conde
Laura B. Ruppalt
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
 Suite 900
Washington, D.C. 20006
Tel.: (202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com

*Counsel for American Free Enterprise Chamber of Commerce, Illinois Corn Growers Association, Indiana Corn Growers Association, Iowa Corn Growers Association, Kansas Corn Growers Association, Kentucky Corn Growers Association, Michigan Corn Growers Association, Missouri Corn Growers Association, Nebraska Corn Growers Association, Tennessee Corn Growers Association, Texas Corn Producers, Wisconsin Corn Growers Association, and National Corn Growers Association*

v

/s/ Katherine C. Yarger
Katherine C. Yarger
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lkcfirm.com
Tel.: (512) 693-8350
Fax: (512) 727-4755

Steven P. Lehotsky
Michael B. Schon
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue NW
 Suite 700
Washington, DC 20001
steve@lkcfirm.com
mike@lkcfirm.com
Tel.: (512) 693-8350
Fax: (512) 727-4755

*Counsel for American Fuel &
Petrochemical Manufacturers,
American Petroleum Institute, and
the National Association of
Convenience Stores*

## REQUEST FOR ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and (f), Appellants respectfully request oral argument. This case involves important issues regarding the law of intervention. Oral argument would aid the Court in its resolution of the case.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... x

JURISDICTIONAL STATEMENT ...................................................... 1

PERTINENT AUTHORITIES ............................................................. 2

ISSUES PRESENTED ........................................................................ 3

INTRODUCTION ................................................................................ 4

STATEMENT OF THE CASE .............................................................. 6

    I.      Legal and Factual Background .................................................. 6

          A.    The Clean Air Act Broadly Preempts State
               Regulation of Motor Vehicle Emissions ........................ 6

          B.    EPA Issues Waivers of Clean Air Act Preemption
               For Three California Mandates ................................... 7

          C.    Congress Repeals EPA's Waivers ................................. 9

    II.     Procedural History ................................................................. 12

          A.    The Motions to Intervene ............................................ 13

          B.    The District Court's Denial ......................................... 16

SUMMARY OF THE ARGUMENT ..................................................... 17

STANDING ....................................................................................... 19

STANDARD OF REVIEW .................................................................. 20

ARGUMENT ...................................................................................... 21

    I.      Appellants Have a Right to Intervene ................................... 21

          A.    The Motions Were Timely ............................................ 22

B.     Appellants Have a Protectable Interest That May Be Practically Impeded ................................................ 23

C.     Federal Defendants Do Not Adequately Represent Appellants' Interests ................................................... 45

II.    The District Court Abused Its Discretion When Denying Permissive Intervention ........................................................ 53

A.     Appellants Satisfy the Requirements for Permissive Intervention ............................................................. 54

B.     The District Court's Denial Rested Upon Legal and Factual Errors ............................................................ 55

CONCLUSION .................................................................................. 57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,*
152 F.3d 1184 (9th Cir. 1998) ..................................................... 24, 49

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
595 U.S. 267 (2022) ................................................ 20, 42, 53, 54, 56

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
647 F.3d 893 (9th Cir. 2011) ............................... 21, 22, 45, 46, 48, 52

*Conservation L. Found. of New England, Inc. v. Mosbacher,*
966 F.2d 39 (1st Cir. 1992) ......................................................... 32, 34

*Cooper v. Newsom,*
26 F.4th 1104 (9th Cir. 2022) ............................................................ 24

*Ctr. for Biological Diversity v. Bernhardt,*
946 F.3d 553 (9th Cir. 2019) ....................................................... 11, 41

*Diamond Alt. Energy, LLC v. EPA,*
606 U.S. 100 (2025) .................................... 12, 25, 32, 33, 34, 37, 38, 51

*E. Bay Sanctuary Covenant v. Biden,*
102 F.4th 996 (9th Cir. 2024) ...................................................... 24, 52

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
541 U.S. 246 (2004) ........................................................... 6, 9, 26, 38

*Est. of Lewis by & through Duran v. City of Columbus,*
158 F.4th 814 (6th Cir. 2025) ............................................................ 29

*Evans v. Synopsys, Inc.,*
34 F.4th 762 (9th Cir. 2022) ............................................................... 1

*Forest Conservation Council v. U.S. Forest Serv.,*
66 F.3d 1489 (9th Cir. 1995) ....................................................... 49, 50

*Freedom from Religion Found., Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) .............................................. 53, 54, 55, 56

*Fresno County v. Andrus*,
  622 F.2d 436 (9th Cir. 1980) .......................................................... 27

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ........................................................ 50

*Golden State Transit Corp. v. City of Los Angeles*,
  493 U.S. 103 (1989) ...................................................................... 26

*Greene v. United States*,
  996 F.2d 973 (9th Cir. 1993) .......................................................... 23

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) ............................................ 22, 24, 25, 39

*Idaho v. Freeman*,
  625 F.2d 886 (9th Cir. 1980) .......................................................... 25

*Kalbers v. DOJ*,
  22 F.4th 816 (9th Cir. 2021) .......................................................... 23

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3d Cir. 1998) .......................................................... 50

*Little Sisters of the Poor Saints Peter & Paul Home v.
  Pennsylvania*, 591 U.S. 657 (2020) ................................................ 19

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) .............................. 26, 27, 35, 36, 47, 48

*LULAC v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) .................................................... 20, 22

*Pennsylvania v. President of the United States of America*,
  888 F.3d 52 (3d Cir. 2018) ............................................................ 27

*Perry v. Schwarzenegger*,
  630 F.3d 898 (9th Cir. 2011) .......................................................... 19

xi

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983)...........................24, 29, 30, 32, 36, 42, 51

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983)...............................................................26

*Sierra Club v. EPA*,
   995 F.2d 1478 (9th Cir. 1993)...............................................28, 41, 43

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994)...............................................................50

*Stringfellow v. Concerned Neighbors in Action*,
   480 U.S. 370 (1987)...............................................................1, 40

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001)................................. 20, 21, 46, 47, 49, 51

*Town of Chester v. Laroe Ests., Inc.*,
   581 U.S. 433 (2017)...............................................................19

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972)............................................................... 45, 52

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004)................................................. 34, 35, 38

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002)...........................................................22

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988)........................................................... 40

*United States v. Stringfellow*,
   783 F.2d 821 (9th Cir. 1986)........................................................... 40

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., &*
   *Prods. Liab. Litig.*, 959 F.3d 1201 (9th Cir. 2020) .......................26, 30

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) .............................1, 21, 22, 23, 31, 48, 49

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,*
    834 F.3d 562 (5th Cir. 2016) ................................................................. 27

*Wilderness Soc'y v. U.S. Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011) ................................. 5, 18, 23, 44, 45, 49

**Statutes**

5 U.S.C. §§ 801–08 ................................................................................... 11

5 U.S.C. § 801(b) ...................................................................................... 11

5 U.S.C. § 802(a) ...................................................................................... 11

28 U.S.C. § 2107(a) .................................................................................... 1

28 U.S.C. § 2107(b) .................................................................................... 1

42 U.S.C. § 1983 ....................................................................................... 26

42 U.S.C. § 7507 ......................................................................................... 7

42 U.S.C. § 7521(a) .................................................................................... 6

42 U.S.C. § 7543(a) ............................................................................ 6, 9, 28

42 U.S.C. § 7543(b) .................................................................................... 6

Pub. L. No. 104-121, 110 Stat. 847 (1996) ............................................. 11

Pub. L. No. 119-15, 139 Stat. 65 (2025) ................................................. 12

Pub. L. No. 119-16, 139 Stat. 66 (2025) ................................................. 12

Pub. L. No. 119-17, 139 Stat. 67 (2025) ................................................. 12

**Regulations**

88 Fed. Reg. 20,688 (Apr. 6, 2023) ........................................................... 9

90 Fed. Reg. 642 (Jan. 6, 2025) ................................................................. 9

90 Fed. Reg. 643 (Jan. 6, 2025) ................................................................. 9

Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C) .................................................. 8

Cal. Code Regs. tit. 13, § 1956.8(a)(2)(D) .................................................. 8

Cal. Code Regs. tit. 13, § 1962.4 ................................................................. 7

Cal. Code Regs. tit. 13, § 1963.1 ................................................................. 8

Cal. Code Regs. tit. 13, § 1963.2 ................................................................. 8

**Other Authorities**

171 Cong. Rec. S3086-03 (daily ed. May 21, 2025) ..................... 10, 29, 32

AFPM, *California's Gas Car Ban and the Congressional
    Review Act (CRA)* (Feb. 19, 2025), https://perma.cc/K4FJ-
    6FMH ................................................................................................. 36

All. for Auto. Innovation, *Get Connected: Electric Vehicle
    Quarterly Report, Third Quarter 2025*, https://perma.cc/
    T24S-PWMT ....................................................................................... 10

All. for Auto. Innovation, *It's Gonna Take a Miracle:
    California and States With EV Sales Requirements* (Dec.
    11, 2024), https://perma.cc/97Y3-Q869 .............................................. 9

All for Auto. Innovation, Press Release, *Automaker
    Statement on Senate Repeal of California Gas Vehicle Ban*
    (May 21, 2025), https://perma.cc/TVY4-6DNC .................................... 9

API, Press Release, *API, AFPM Applaud Decisive Senate
    Vote to Overturn California Gas Car Ban* (May 22, 2025),
    https://perma.cc/H3MA-7Y3J; ........................................................... 36

CARB, *Omnibus Program Initial Statement of Reasons* (June
    23, 2020), https://perma.cc/32CP-SSV8 .............................................. 8

Daimler Comments on Proposed Amendments to ACT
    Regulation and the Zero-Emission Powertrain
    Certification Test Procedure (July 14, 2025),
    https://perma.cc/563L-ZQ7E .............................................................. 10

xiv

Fed. R. App. P. 4(a)(1)(A), (B) ................................................................ 1

Fed. R. Civ. P. 24(a)(2) ......................................................................... 43

Fed. R. Civ. P. 24(b)(1)(B) ....................................................................54

Ill. Corn Growers Ass'n, *California EV Mandates, Clean Air
 Act, and a Congressional Review Act Vote* (May 20, 2025),
 https://perma.cc/8YAS-6QZD..............................................................36

Letter from All. for Auto. Innovation to Mike Johnson,
 Speaker, U.S. House of Representatives, and Hakeem
 Jeffries, Minority Leader, U.S. House of Representatives
 (Apr. 25, 2025), https://perma.cc/QX4V-YQKY .................................29

NACS, *U.S. House Votes to Overturn California-Led EV
 Mandates for Cars and Trucks* (May 1, 2025),
 https://perma.cc/B5LD-22LD;..............................................................36

NADA, Press Release, *America's Franchised Auto and Truck
 Dealers Applaud Enactment of Legislation Revoking
 California's Ban on Gas Cars and Diesel Trucks* (June
 2025), https://perma.cc/M9KB-7LBP...................................................31

NADA, *Stop California's ZEV Mandate / Sales Ban on Gas
 Cars Which Will Harm All Vehicle Consumers - Pass H.J.
 Res.88* (July 2025), https://perma.cc/C75N-GBT5..............................31

Off. of Gov. Gavin Newsom, Exec. Order N-79-20 (Sept. 23,
 2020), https://perma.cc/VK64-G93C ............................................... 7, 34

*Roll Call 111 | Bill Number: H.J. Res. 87*, U.S. House of
 Representatives (Apr. 30, 2025), https://perma.cc/RCD6-
 QA6L ..................................................................................................12

*Roll Call 112 | Bill Number: H.J. Res. 89*, U.S. House of
 Representatives (Apr. 30, 2025), https://perma.cc/3M9T-
 HDF8...................................................................................................12

*Roll Call 114 | Bill Number: H.J. Res. 88*, U.S. House of Representatives (May 1, 2025), https://perma.cc/46A6-JNK3 .................................................................................. 11

*Roll Call Vote Summary on H.J. Res. 88*, U.S. Senate (May 22, 2025), https://perma.cc/B4X7-YA4U ............................................. 12

*States That Have Adopted California's Vehicle Regulations*, CARB (last updated Apr. 2025), https://perma.cc/AG5L-GZFN .................................................................................. 9

## JURISDICTIONAL STATEMENT

The district court's order denying intervention is an appealable final order. *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022); *see also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987) ("[W]hen an order prevents a putative intervenor from becoming a party in *any* respect, the order is subject to immediate review.").

The appeals are timely. An appeal must be filed within 60 days of the order if one of the parties is the United States or a federal agency. *See* 28 U.S.C. § 2107(a), (b); Fed. R. App. P. 4(a)(1)(A), (B). Because the United States is a party, the 60-day deadline applies. *Evans v. Synopsys, Inc.*, 34 F.4th 762, 768–70 (9th Cir. 2022). The district court denied intervention on December 2, 2025. 1-ER-3. Appellants timely appealed by filing their notices of appeal less than 60 days later. 4-ER-581, 4-ER-589, 4-ER-597.

## PERTINENT AUTHORITIES

Federal Rule of Civil Procedure 24 sets out the rule for intervention in civil actions pending before U.S. district courts. The Rule provides:

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

(1) In General. On timely motion, the court may permit anyone to intervene who: …

(B) has a claim or defense that shares with the main action a common question of law or fact.

## ISSUES PRESENTED

The issues presented are whether:

1. Appellants are entitled to intervene as of right.

2. The district court abused its discretion when denying Appellants' requests for permissive intervention.

## INTRODUCTION

In this suit, California and several other aligned States ("Plaintiffs") have challenged three recent federal laws that block them from imposing regulations to phase out—and ultimately ban—the sale of new internal-combustion engine vehicles and mandate sales of electric vehicles. This appeal presents a straightforward question of Federal Civil Procedure: can trade groups representing automakers, motor vehicle dealers, and liquid fuel producers intervene in this suit to protect their members from these unattainable state sales mandates, competitive disadvantages, and product bans? Under this Court's liberal standards for intervention, the answer is yes.

The district court disagreed. Although the court below recognized the enormous concrete economic harms that Appellants' members face, it nevertheless denied intervention, characterizing the case as an abstract dispute over congressional "procedure," and concluding that neither automakers, nor motor vehicle dealers, nor fuel producers had any legal stake in the outcome because their legal and economic interests were "ancillary" to the question of congressional procedure. In doing so, the district court improperly substituted Federal Rule of Civil Procedure

24(a)(2)'s broad focus on the "transaction that is the subject of the action," for a narrow inquiry about Plaintiffs' legal theories. As a result, the district court effectively held that no one, other than the federal government, can have a protectable interest in defending alleged violations of federal procedure. This Court unanimously, and rightly, rejected basically the same rule en banc in *Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173, 1177–80 (9th Cir. 2011) (en banc). It should do so again here.

The district court also found that Appellants failed to show that the Federal Defendants would not adequately represent their interests, predicting that no would-be intervenor would raise different arguments. But even by the time of the district court's decision, it was clear that Appellants were pursuing at least one additional, dispositive argument.

Last, the district court denied permissive intervention. But it based its denial on the erroneous premise that Federal Defendants adequately represent Appellants. That was an abuse of discretion.

The district court's order must be reversed.

5

## STATEMENT OF THE CASE

### I. Legal and Factual Background

#### A. The Clean Air Act Broadly Preempts State Regulation of Motor Vehicle Emissions

Section 202(a) of the Clean Air Act authorizes the U.S. Environmental Protection Agency ("EPA") to comprehensively regulate emissions from new motor vehicles. 42 U.S.C. § 7521(a). The Clean Air Act also broadly preempts state law regulating new motor vehicle emissions. Section 209(a) provides that "[n]o State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." *Id.* § 7543(a). This law grants automakers a "right to sell federally approved vehicles," and gives purchasers a concomitant "right to buy" those vehicles, unfettered by state emissions regulations. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 255 (2004).

The Clean Air Act allows one exception from this express preemption. Section 209(b) provides that EPA "shall … waive application of [preemption] to" California—and only California—if certain statutory criteria are met. 42 U.S.C. § 7543(b). Once California has a waiver, under

6

section 177 of the Act, other States may adopt identical standards, if certain conditions are met. *Id.* § 7507.

## B. EPA Issues Waivers of Clean Air Act Preemption For Three California Mandates

In 2020, Governor Gavin Newsom announced California's goal of phasing out internal-combustion engine vehicles and replacing them with so-called "zero-emission" cars and trucks (i.e., battery-electric or fuel-cell-electric vehicles) (hereinafter, "electric vehicles"). *See* Off. of Gov. Gavin Newsom, Exec. Order N-79-20 (Sept. 23, 2020), https://perma.cc/VK64-G93C. Over the next several years, California adopted regulatory programs to accomplish that end, three of which are relevant here.

*First*, Advanced Clean Cars II ("ACCII") requires automakers to sell an annually increasing percentage share of light-duty electric vehicles (and so an annually decreasing share of internal-combustion engine vehicles powered by gasoline or diesel) starting in model year 2026. The required electric vehicle sales start at 35% of the fleet; by model year 2035, all cars and light trucks sold must be electric (though up to 20% of the required electric sales may be plug-in hybrid electric vehicles). *See* Cal. Code Regs. tit. 13, § 1962.4.

7

*Second*, Advanced Clean Trucks ("ACT") requires manufacturers of new medium- and heavy-duty vehicles to sell an annually increasing percentage share of electric vehicles (and so an annually decreasing share of internal-combustion engine vehicles) starting in model year 2024. Sales of new internal-combustion engine vehicles must be offset with "credits" generated by sales of electric trucks. The required offset increases annually and varies by vehicle class. By 2035, ACT requires truck manufacturers to offset at least 55% of their Class 2b-3 sales (heavy-duty pickups), 75% of their Class 4-8 sales (box trucks to semis), and 40% of their Class 7-8 sales (day and sleeper cab semis). *See id.* §§ 1963.1, 1963.2.

*Third*, the Omnibus Low NO$_x$ Program ("Omnibus") sets nitrogen oxide emissions standards for medium- and heavy-duty vehicles so low that manufacturers are strongly incentivized to increasingly sell more electric trucks to comply. *See id.* § 1956.8(a)(2)(C), (D). *See* Cal. Air Res. Bd. ("CARB"), *Omnibus Program Initial Statement of Reasons*, at I-36 (June 23, 2020), https://perma.cc/32CP-SSV8 (aspects of Omnibus are "intended to provide incentives for manufacturers to make more heavy-duty [electric vehicles]").

8

These programs "relat[e] to the control of emissions from new motor vehicles" and are ordinarily preempted by section 209(a). 42 U.S.C. § 7543(a); *cf. Engine Mfrs. Ass'n*, 541 U.S. at 253. California accordingly requested, and eventually obtained, waivers from EPA.

EPA promulgated a waiver for ACT in April 2023, 88 Fed. Reg. 20,688 (Apr. 6, 2023), and waivers for ACCII and Omnibus in January of 2025. 90 Fed. Reg. 642 (Jan. 6, 2025); 90 Fed. Reg. 643 (Jan. 6, 2025). Eleven other states and the District of Columbia have adopted one or more of these programs. *See States That Have Adopted California's Vehicle Regulations*, CARB (last updated Apr. 2025), https://perma.cc/AG5L-GZFN.

## C.   Congress Repeals EPA's Waivers

EPA's waivers were controversial. Automakers warned that ACCII "will depress economic activity, increase costs and limit vehicle choice," All. for Auto. Innovation, *It's Gonna Take a Miracle: California and States With EV Sales Requirements* 2–3, 8 (Dec. 11, 2024), https://perma.cc/97Y3-Q869, and that "the [electric vehicles] sales mandates were never achievable," All for Auto. Innovation, Press Release, *Automaker Statement on Senate Repeal of California Gas Vehicle Ban*

9

(May 21, 2025), https://perma.cc/TVY4-6DNC. Sales of new electric vehicles in California, and even more so in States following California, are far behind the aggressive mandates set by ACCII. *See* All. for Auto. Innovation, *Get Connected: Electric Vehicle Quarterly Report, Third Quarter 2025*, at 11–12, https://perma.cc/T24S-PWMT (reporting sales percentages by state). To comply, automakers would have had to sharply reduce sales of new internal-combustion engine cars and light trucks that most Americans prefer and can afford, with cascading effects on the companies that supply fuels for those vehicles.

That is what happened in the heavy-duty vehicle market after California's ACT and Omnibus regulations took effect under state law in 2024. New model year Class 4-8 motor vehicle registrations plummeted in California in response to these rules. *See* Daimler Comments on Proposed Amendments to ACT Regulation and the Zero-Emission Powertrain Certification Test Procedure 2–3 (July 14, 2025), https://perma.cc/563L-ZQ7E.

Members of Congress agreed that the costs of the regulations would be "massive" and "hundreds of thousands of jobs will be eliminated." 171 Cong. Rec. S3086-03, S3087 (daily ed. May 21, 2025) (statement of Sen.

10

Capito, Chairman, Env't & Pub. Works Comm.). Responding to the outcry, Congress opted for legislation to fully and finally disapprove the EPA waivers through the Congressional Review Act ("CRA"). The CRA provides expedited legislative procedures through which Congress may review, and ultimately disapprove, rules issued by federal agencies. Pub. L. No. 104-121, § 251, 110 Stat. 847, 868–74 (1996), *codified at* 5 U.S.C. §§ 801–08. If Congress passes and the President signs a "joint resolution" of disapproval, then the rule "shall not take effect (or continue)," and the rule "may not be reissued in substantially the same form" unless "specifically authorized by a law enacted after the date of the joint resolution." 5 U.S.C. § 801(b); *see also id.* § 802(a) (a disapproved action has "no force or effect"). A joint resolution signed by the President is federal law, enacted in accordance with bicameralism and presentment. *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562 & n.6 (9th Cir. 2019) (citing U.S. Const. art. I, §§ 1, 7).

In early April 2025, resolutions of disapproval for all three waivers were introduced in the House (the "Resolutions"). By May 1, the House had passed all three Resolutions with bipartisan majorities. *See Roll Call 114 | Bill Number: H.J. Res. 88*, U.S. House of Representatives (May 1,

11

2025), https://perma.cc/46A6-JNK3; *Roll Call 112 | Bill Number: H.J. Res. 89*, U.S. House of Representatives (Apr. 30, 2025), https://perma.cc/3M9T-HDF8; *Roll Call 111 | Bill Number: H.J. Res. 87*, U.S. House of Representatives (Apr. 30, 2025), https://perma.cc/RCD6-QA6L. On May 22, the Senate voted to adopt all three, with bipartisan disapproval of the ACCII waiver. *See Roll Call Vote Summary on H.J. Res. 88*, U.S. Senate (May 22, 2025), https://perma.cc/B4X7-YA4U. On June 12, the President signed the Resolutions into law. Pub. L. No. 119-15, 139 Stat. 65 (2025); Pub. L. No. 119-16, 139 Stat. 66 (2025); Pub. L. No. 119-17, 139 Stat. 67 (2025). As the Supreme Court has noted, this "legislation … block[s] [the] California regulations" by restoring federal preemption. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 107 n.1 (2025).

## II. Procedural History

Within hours of the President's signing of the Resolutions, California and several other States that had adopted California's programs sued. *See* Complaint, *California v. United States* (June 12, 2025), Dkt. 1. As amended, the complaint alleges statutory and constitutional violations by EPA and its Administrator, non-party Congress, and the President (collectively, "Federal Defendants"). Plaintiffs ask the district court,

12

among other things, to declare that the CRA does not apply to the waivers, to vacate EPA's supposed "reclassification" of the waivers as "rules" covered by the CRA, to enjoin EPA from "reclassify[ing]" other waivers, to "declare that the Resolutions were not enacted under the CRA," to declare the Resolutions unconstitutional and void, and to enjoin EPA from enforcing the Resolutions. 2-ER-177. Although Plaintiffs' claims are hard to follow, at bottom, they ask the district court to declare the Resolutions void so Plaintiffs may continue regulating new motor vehicles under ACCII, ACT, and Omnibus, free from Clean Air Act preemption. *See* 1-ER-5 ("Plaintiffs argue that the three preemption waivers should thus be considered valid and in effect.").

## A. The Motions to Intervene

Appellants promptly moved to intervene to defend the Resolutions against Plaintiffs' challenge. 3-ER-438, 3-ER-372, 2-ER-261. Appellants are trade and business associations whose members, and the products those members make and sell, are the direct and intended objects of EPA's waivers and the California regulations those waivers purport to allow, and thus are legally protected by the Resolutions. Appellants' members include full-line automakers; motor vehicle dealers; fleet

13

purchasers; gasoline, diesel, and renewable fuel producers and marketers; and more. Appellants have an obvious practical interest in defending the Resolutions against Plaintiffs' challenge: By repealing EPA's waivers, the Resolutions restore federal preemption and thus restore the right to sell and buy motor vehicles free from state mandates and eliminate regulatory programs intended to drive down consumption of liquid fuels.

Specifically, Appellants are:

- The Alliance for Automotive Innovation ("Auto Innovators"), representing automobile manufacturers who collectively produce and sell over ninety percent of the new passenger vehicles and light-duty trucks sold in the United States. 2-ER-268–69.

- The National Automobile Dealers Association ("NADA"), an association of "franchised new car and truck dealers in the United States, representing more than 16,000 vehicle dealers that engage in the sale of new vehicles throughout the country, including 1,178 new car dealers in California." 2-ER-269.

- The American Fuel & Petrochemical Manufacturers ("AFPM"), a trade association representing nearly all U.S. refining

capacity and petrochemical manufactures, including petroleum refineries who operate in California. 3-ER-387–89.

- The American Petroleum Institute ("API"), a national trade association representing all segments of America's oil and natural gas industry, including petroleum refiners who operate and sell in California. 3-ER-391–92.

- The National Association of Convenience Stores ("NACS"), a trade association representing the convenience and fuel retailing industry. NACS represents more than 150,000 U.S. convenience stores, including in California, which sell about 80% of the motor fuels purchased at retail across the United States. 3-ER-396–97.

- The American Free Enterprise Chamber of Commerce ("Am-Free"), a national association representing vehicle dealers, fuel producers, and fleet operators. 3-ER-448–49; *see also* 3-ER-464, 3-ER-467–68.

- Corn Grower Associations representing American farmers who grow and sell corn for fuel-ethanol production. 3-ER-450, 3-ER-507–08.

Each organization has a vital practical interest in the restoration of federal preemption accomplished by the Resolutions.

## B.    The District Court's Denial

Plaintiffs opposed Appellants' intervention. 3-ER-359, 3-ER-346, 2-ER-249. Plaintiffs argued that no Appellant has a protectable interest in defending the Resolutions and that the Federal Defendants adequately represent Appellants' interests. 1-ER-6. The district court agreed and denied intervention as of right and permissive intervention for all would-be intervenors, including Appellants. 1-ER-6–10.

The district court said that Appellants raised only "economic interests" and characterized the case as a "procedural" disagreement about the CRA. 1-ER-7. It then concluded that the economic harms Appellants would suffer from a judgment voiding the Resolutions were "ancillary to the actual issues raised in this case" and that "intervention as of right is not appropriate here." 1-ER-7–8.

The district court also concluded that Appellants "share the same ultimate objective with Federal Defendants" and that Appellants' merits arguments "mirror those of Federal Defendants"—with "[n]one of Proposed Intervenors' arguments appear[ing] unique to them"—so it was "purely speculative" that Federal Defendants would "not accurately represent their interests in this case." 1-ER-8–9. The district court noted

16

that, although "it is theoretically possible that there could be a presidential administration change or policy shift during the pendency of this case," that is "always possible" and thus insufficient to show inadequate representation. 1-ER-9.

The district court also denied permissive intervention. The court concluded that "since [Appellants'] interests are already adequately represented by Federal Defendants," allowing them to intervene "would needlessly complicate case management and compromise the efficiency of the litigation process." 1-ER-10.

## SUMMARY OF THE ARGUMENT

Appellants are entitled to intervene as of right and, in any event, the district court abused its discretion when denying permissive intervention.

First, Appellants have protectable interests as regulated entities, intended beneficiaries, economic stakeholders, and supporters of the Resolutions. They are intended beneficiaries of the Resolutions because they are the direct regulatory targets of the California mandates approved by the EPA waivers that those Resolutions invalidate. Congress passed and the President signed the Resolutions precisely to restore federal

17

preemption protecting Appellants' members from unattainable state sales mandates, competitive disadvantages, and product bans, and the resulting consequences. If Plaintiffs succeed, then these protections will vanish and Appellants will face immediate harm.

The district court's contrary ruling is wrong. As an initial matter, by mischaracterizing the interests here as merely economic, the district court ignored non-economic interests raised by Appellants. Moreover, the district court's exclusive focus on Plaintiffs' procedural "issues" improperly ignored Rule 24(a)(2)'s focus on the underlying "transaction"—the Resolutions—not the legal "issues" raised by Plaintiffs. The district court's characterization of Appellants' interests as "ancillary" to a "procedural" dispute imposes a categorical "federal-defendant rule"—a rule that private parties have no interest warranting intervention in disputes relating to the government's compliance with legal procedures. This Court has already rejected this same kind of categorical rule en banc. *Wilderness Soc'y*, 630 F.3d at 1177–80. It should do so again here.

Second, Appellants met their burden of showing that Federal Defendants may not adequately represent their interests. Indeed, Federal Defendants have already failed to adequately represent Appellants by

18

not raising the dispositive argument that EPA's waivers are "rules" subject to the CRA, which Appellants advanced below. This is unsurprising. The Federal Defendants' interests here focus on protecting prerogatives of Congress and the national government, which diverge from Appellants' concrete commercial interests, thus making different litigation choices likely. And Federal Defendants' documented history of repeatedly reversing position on EPA waivers creates a non-speculative risk that their defense may be abandoned entirely.

Third, the district court abused its discretion by denying permissive intervention based upon the same legally and factually flawed adequacy-of-representation finding.

## STANDING

"In general, an applicant for intervention need not establish Article III standing to intervene." *Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020). "[A]n intervenor of right," to be sure, "must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017). But no Appellant

19

here has sought relief different from that of the United States—all simply seek dismissal of Plaintiffs' complaint. *See, e.g.*, 3-ER-512, 3-ER-404, 3-ER-294, 2-ER-90, 2-ER-16. Therefore, Article III's standing requirement is inapplicable to Appellants' intervention. Nevertheless, Appellants amply satisfy all three standing prongs based upon their many concrete protectable interests at stake, as discussed below. *See* Part I.B, *infra*; *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001) (a protectable interest sufficient for intervention establishes standing).

## STANDARD OF REVIEW

This Court reviews "a district court's denial of a motion to intervene as of right pursuant to Rule 24(a)(2) *de novo*." *LULAC v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). "Resolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought. But a court fails to exercise its discretion soundly when it bases its ruling on an erroneous view of the law." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 278–79 (2022) (cleaned up).

20

## ARGUMENT

Appellants are entitled to intervene as of right under Rule 24(a)(2). The district court also abused its discretion when it denied permissive intervention under Rule 24(b)(1)(B).

## I.   Appellants Have a Right to Intervene

This Court applies a four-part test to assess intervention as of right under Rule 24(a)(2): "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted); *see also W. Watersheds Project*, 22 F.4th at 835. Courts are "required to accept as true the non-conclusory allegations made in support of an intervention motion." *Berg*, 268 F.3d at 818–19.

This Court reads Rule 24 "broadly in favor of proposed intervenors," adopting a "liberal policy in favor of intervention" that "allow[s] parties with a *practical* interest in the outcome of a particular case to intervene."

21

*United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (citations omitted). Further, "[t]hat this litigation may become more tangled and complex with the addition of interested parties is not a basis for denial of intervention." *W. Watersheds Project*, 22 F.4th at 839.

Appellants satisfy all four requirements to intervene as of right.

## A. The Motions Were Timely

"In determining timeliness," courts consider "three factors—the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay." *LULAC*, 131 F.3d at 1308.

In this case, "Plaintiffs do not dispute that Proposed Intervenors' motions to intervene were timely." 1-ER-6. For good reason. Appellants moved for intervention at the earliest stage of the proceedings, "before any hearings or rulings on substantive matters," *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995), and well within the timeframe this Court has held is appropriate.[1] Intervention, therefore,

---

[1] *See, e.g.*, *Idaho Farm*, 58 F.3d at 1397 (allowing intervention four months after the complaint was filed and after plaintiff had moved for preliminary injunction); *City of Los Angeles*, 288 F.3d at 398 (timeliness easily satisfied where "motion was filed only approximately one and half months after the suit was filed"); *Citizens for Balanced Use*, 647 F.3d at 897 (motion timely when filed "less than three months after the

(*footnote continued on next page*)

will not prejudice the parties. *Kalbers v. DOJ*, 22 F.4th 816, 826 (9th Cir. 2021) ("lack of prejudice weighs heavily in favor of timeliness"). Timeliness is not at issue in this appeal.

### B. Appellants Have a Protectable Interest That May Be Practically Impeded

The second and third parts of the intervention test require that a movant have "a significantly protectable interest" related to "the subject of the action" and that the "disposition of the action may as a practical matter impair or impede [the movant's] ability to protect that interest." *Wilderness Soc'y*, 630 F.3d at 1177 (cleaned up). A movant "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

A court's application of the intervention test is "guided primarily by practical considerations, not technical distinctions." *W. Watersheds Project*, 22 F.4th at 835. Accordingly, "[n]o specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.

---

complaint was filed and less than two weeks after [defendant] filed its answer").

1993). An economic interest suffices when it is "concrete and related to the underlying subject matter of the action." *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1002 (9th Cir. 2024) (citation omitted). For example, a union has an interest sufficient for intervention as of right where its worker members may be economically harmed by a federal preemption suit challenging a state's prevailing-wage requirements. *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189–90 (9th Cir. 1998).

Further, "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm*, 58 F.3d at 1397; *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (same); *see also Cooper v. Newsom*, 26 F.4th 1104, 1112 (9th Cir. 2022) (Bumatay, J., dissenting from denial of rehearing en banc) (listing groups that have been granted intervention based on their support of, or engagement in the process for, the challenged action). These groups have typically supported measures—and sought intervention—related to members' intangible interests in matters such as preserving birds and their habitats, *Sagebrush Rebellion*, 713 F.2d at 528; providing snails protected status as endangered species,

24

*Idaho Farm,* 58 F.3d at 1397–98; or promoting the equal rights amendment, *Idaho v. Freeman,* 625 F.2d 886, 887 (9th Cir. 1980). But there is no principled distinction allowing this Court to favor 501(c)(3) organizations that seek intervention to protect their members' ideological or aesthetic preferences while denying intervention to similarly situated 501(c)(4) and (c)(6) organizations that seek to protect their members' more concrete economic interests. The Court should not arbitrarily favor "one class of litigants over others." *Cf. Diamond Alt. Energy,* 606 U.S. at 132 (Jackson, J., dissenting) ("If the Court privileges the interests of one class of litigants over others, even unintentionally, it can damage Americans' faith in an impartial Judiciary and undermine the long-term credibility of its judgments.").

### 1. *Appellants Have Protectable Interests*

Appellants have multiple protectable interests—as regulated entities, intended beneficiaries, economic stakeholders, and supporters of the Resolutions—that justify intervention as of right under Rule 24(a)(2).

### *Automakers*

Auto Innovators represents automakers who collectively "sell over ninety percent of the new passenger vehicles and light-duty trucks sold in the United States." 2-ER-268. Because its automaker members are

directly impacted by EPA's action granting a waiver for ACCII, Auto Innovators has a paramount interest in defending the Resolutions.

The Resolutions restore automakers' Clean Air Act "right to sell federally approved vehicles" free from ACCII's mandates. *Engine Mfrs. Ass'n*, 541 U.S. at 255 (citing 42 U.S.C. § 7543(a)). This right is protectable: Automakers or their membership associations may enforce section 209(a) of the Clean Air Act by seeking prospective relief against state officials. *See, e.g.*, *id.*; *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105–06 (1989); 42 U.S.C. § 1983. Automakers may also raise federal preemption as an affirmative defense in state enforcement proceedings or in private lawsuits relying upon state law. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1217 (9th Cir. 2020).

As an association representing "intended beneficiaries" of the federal preemption the Resolutions restore, Auto Innovators has a "significant protectable interest" under *Lockyer*, 450 F.3d at 441. In *Lockyer*, an alliance of Catholic medical providers had an interest sufficient to intervene to defend the Weldon Amendment because Congress passed the

26

Amendment "precisely" to protect its members from being penalized for not performing abortions. *Id.*; *see also Fresno County v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (similar). Other circuits have applied Rule 24(a) in a similar way. For example, a trade association for stores licensed to sell liquor in Texas had a right to intervene in a challenge to the constitutionality of Texas's restrictions on liquor sales as "the intended beneficiary" of the State's liquor restrictions. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 564–65, 569 (5th Cir. 2016); *see also Pennsylvania v. President of the United States of America*, 888 F.3d 52, 58 (3d Cir. 2018) (as intended beneficiaries, "the Little Sisters have a significantly protectable interest in the religious exemption" from the contraceptive mandate).

Here, Congress passed the Resolutions to restore automakers' federal right to sell new motor vehicles unimpeded by the burdens imposed by ACCII, ACT, and Omnibus. Because automakers are intended beneficiaries of section 209(a), they have a protectable interest in the continued validity of the Resolutions.

This legal right would be directly affected by Plaintiffs' lawsuit, which suffices under this Court's precedent concerning intervention as of

27

right. For example, in *Sierra Club v. EPA*, the City of Phoenix sought to intervene in a citizen suit brought under the Clean Water Act. 995 F.2d 1478, 1480 (9th Cir. 1993). "Because the [Clean Water] Act protects the interest of a person who discharges pollutants pursuant to a permit, and the City of Phoenix owns such permits, the City ha[d] a 'protectable' interest." *Id.* at 1485–86. And it was enough for the City to show that its permits "*may* be modified by control strategies issued as a result of th[e] litigation." *Id.* at 1486 (emphasis added).

As in *Sierra Club*, the Resolutions "protect[] the interests" of automakers selling new motor vehicles by restoring the Clean Air Act's preemption of state requirements. *Id.* at 1485; *see also* 42 U.S.C. § 7543(a). Those interests will—not just "may," *Sierra Club*, 995 F.2d at 1486—be affected if Plaintiffs succeed in having the Resolutions declared void, and automakers are again subjected to state requirements. Indeed, impairing automakers' right to sell new motor vehicles free from ACCII, ACT, and Omnibus is Plaintiffs' ultimate litigation goal.

Preserving federal preemption is not just a legal interest—it is also of enormous practical concern to Auto Innovators' members. California has stated that it "reserves its right to enforce the regulations covered by

28

the waivers targeted by the congressional resolutions in the event a court of law holds those resolutions invalid, including [retroactively]." 2-ER-289; *see also* 2-ER-273, 2-ER-277. Thus, the Resolutions protect automakers not just from state mandates, but also from the impending threat of enormous civil fines—a threat to "property interests," the most elementary of legal interests supporting intervention as of right. *Est. of Lewis by & through Duran v. City of Columbus*, 158 F.4th 814, 823 (6th Cir. 2025); 2-ER-277–78; *cf.* 171 Cong. Rec. S3086-03, S3086 ("These unattainable standards, backed by a fine of $26,000 per vehicle—I said $26,000 per vehicle—for noncompliance attempt to reshape auto manufacturing and take away consumer choice all across the country." (statement of Sen. Capito)).

Finally, this Court has recognized that when a suit challenges legislative measures that an organization supported, "disposition of [the] suit might, as a practical matter, impair the ability of the organization to protect its interest." *Sagebrush Rebellion*, 713 F.2d at 527. The Auto Innovators actively urged Congress to pass the Resolutions. *See* Letter from All. for Auto. Innovation to Mike Johnson, Speaker, U.S. House of Representatives, and Hakeem Jeffries, Minority Leader, U.S. House of

29

Representatives (Apr. 25, 2025), https://perma.cc/QX4V-YQKY. Auto Innovators therefore has "a protectable interest" in defending the Resolutions. *Sagebrush Rebellion*, 713 F.2d at 528.

### *Motor Vehicle Dealers*

Motor vehicle dealers have similar protected interests. Like automakers, dealers are integral to the distribution chain of new motor vehicles that section 209(a) protects. The right to sell federally approved vehicles extends to dealers selling new motor vehicles to the "ultimate purchaser." *See In re Volkswagen "Clean Diesel" Mktg.*, 959 F.3d at 1216, 1218 (citing 42 U.S.C. §§ 7543(a), 7550(3)). Because dealers operate within this federally preempted space, they are also protected by the section 209(a) preemption scheme that the Resolutions restore. NADA represents more than 16,000 franchised new car and truck dealers, including 1,178 in California, and therefore has a protectable interest in defending the Resolutions. 2-ER-269.

NADA also has an enormous practical interest in defending the Resolutions. ACCII "would fundamentally alter the fleet mix of NADA's dealer members and hinder their ability to satisfy their customers' demands for internal combustion and hybrid vehicles." 2-ER-277. If the

30

district court holds the Resolutions void, then dealers will face a constricted supply of the motor vehicles their customers want to buy and be forced to stock electric vehicles that are slower to sell. ACCII would also create significant allocation issues between states; electric vehicles would be pushed to states operating under the ACCII regime, and internal combustion engine vehicles would be potentially withheld from those states, requiring customers to cross state lines to satisfy their demands. These allocation distortions would be particularly acute for dealers in states that have adopted the ACCII regime but which border states that have *not* done so. These substantial effects on NADA's members' legally protected ability to conduct business constitute a significantly protectable interest. *See W. Watersheds Project*, 22 F.4th at 834–35.

NADA has also long advocated for "single, national emissions standards that are technologically feasible, economically practicable, and do not restrict consumer choice." 2-ER-269. NADA accordingly championed the Resolutions.[2] NADA's advocacy was even referenced on the

---

[2] *See, e.g.*, NADA, Press Release, *America's Franchised Auto and Truck Dealers Applaud Enactment of Legislation Revoking California's Ban on Gas Cars and Diesel Trucks* (June 2025), https://perma.cc/M9KB-7LBP; NADA, *Stop California's ZEV Mandate/Sales Ban on Gas Cars Which*

(*footnote continued on next page*)

31

Senate floor by Senator Capito, who introduced the Resolution relating to ACCII. 171 Cong. Rec. S3086-03, S3087. Given NADA's active support for the Resolutions, "there can be no serious dispute" that it has "a protectable interest" sufficient for intervention as of right. *Sagebrush Rebellion*, 713 F.2d at 528.

### *Fuel Producers and Marketers*

Fuel producers and marketers have a significantly protectable interest because their fuel products are "the real targets of … the regulatory plan" preempted by the Resolutions. *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (collecting cases); *cf. Diamond Alt. Energy*, 606 U.S. at 114, 125 (explaining that, for standing, "when a plaintiff is the object of a government regulation, there should ordinarily be little question that the regulation causes injury to the plaintiff" (cleaned up)).

AFPM represents petroleum refiners that produce gasoline and diesel for use in motor vehicles across the country, including in California. 3-ER-387–88. API represents all segments of the oil and natural gas

---

*Will Harm All Vehicle Consumers - Pass H.J. Res.88* (July 2025), https://perma.cc/C75N-GBT5.

industry, including members who also sell gasoline and diesel in California. 3-ER-391–92. The Corn Growers represent thousands of American farmers whose crops are used to make fuel-ethanol, the second-largest component of automobile gasoline by volume. *See, e.g.*, 3-ER-507–08. NACS represents the convenience and fuel retailing industry, and its members sell approximately 80% of the liquid fuels purchased at retail in the United States. 3-ER-396–97. Together, these organizations represent a majority of the entities that fuel America's motor vehicle fleet.

No less than directly regulated automakers, fuel producers and marketers have a concrete interest in defending federal laws protecting demand for their fuel products from state-ordered destruction. Regulations such as ACCII and ACT "explicitly seek to restrict the use of gasoline and other liquid fuels in automobiles." *Diamond Alt. Energy*, 606 U.S. at 114–15. Although the regulations technically apply to new motor vehicles, California's programs ultimately "target[] the use of gasoline and other liquid fuels by regulating at the assembly line rather than the gas pump." *Id.* at 115. "When the government prohibits or impedes Company A from using Company B's product, then both Company A and Company B might be deemed objects of the government action at issue." *Id.*

33

Indeed, California is not subtle about its regulatory objective: Governor Newsom's executive order declares that a transition away from gasoline and diesel to electricity and hydrogen is "a goal of the State." *See* Off. of Gov. Gavin Newsom, Exec. Order N-79-20, *supra.*

The Resolutions "block" California's market-distorting regulations, which are designed to reduce demand for liquid fuel products. *Diamond Alt. Energy*, 606 U.S. at 107 n.1. As "the real targets" of California's programs, fuel producers and marketers have a compelling interest in defending the Resolutions that block these state mandates. *Mosbacher*, 966 F.2d at 43. Relief from this targeting creates a sufficient interest for intervention, just as direct regulation does.

These economic interests are "concrete and related to the underlying subject matter" of the suit. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). If Plaintiffs prevail and the Resolutions are declared void, then the reinstated waivers will again "suppress demand for some of the core products AFPM members manufacture and distribute," 3-ER-388; cause monetary injury to API members through reduced sales and diminished asset utilization, 3-ER-393; decrease demand for Corn Growers' members' crops used to produce fuel-ethanol and reduce

34

the price commanded by their corn, 3-ER-510; and reduce NACS's members' fuel sales and revenue, 3-ER-397. These "non-speculative, economic interest[s] … support a right of intervention." *Alisal Water Corp.*, 370 F.3d at 919.

It does not matter if the legal relations between fuel producers and marketers and Plaintiffs are not directly altered by the Resolutions. This Court looks to "practical impairment," not "technical" privity. *See Lockyer*, 450 F.3d at 441. The legal relations of the Catholic medical providers in *Lockyer* were not directly altered by the Weldon Amendment, which limited federal funds to States that discriminated against medical providers who refused to perform or refer for abortions. *Id.* at 439. Nor did the Amendment "give the proposed intervenors any enforceable rights." *Id.* at 441. Nonetheless, the providers could intervene to defend the Amendment because they were "intended beneficiaries." *Id.* at 441–42. The same logic applies here: Like automakers and dealers, fuel producers and marketers are intended beneficiaries of the Resolutions, which protect their products from demand destruction. Motor vehicles and motor fuels go hand-in-hand; they are two sides of the same coin. That Congress

35

acted through the CRA rather than by "granting affirmative rights" to Appellants "is of no consequence." *Id.* at 441.

These Appellants also have a protectable interest because they "supported" and "championed" the challenged Resolutions. *Sagebrush Rebellion*, 713 F.2d at 527. AFPM, API, NACS, and the Corn Growers have long advocated for the national uniformity that the Resolutions restore and are therefore the most suitable parties to defend that interest. 3-ER-455, 3-ER-387, 3-ER-392, 3-ER-396, 3-ER-339. The groups emphatically supported the Resolutions. *See, e.g.*, AFPM, *California's Gas Car Ban and the Congressional Review Act (CRA)* (Feb. 19, 2025), https://perma.cc/K4FJ-6FMH; API, Press Release, *API, AFPM Applaud Decisive Senate Vote to Overturn California Gas Car Ban* (May 22, 2025), https://perma.cc/H3MA-7Y3J; NACS, *U.S. House Votes to Overturn California-Led EV Mandates for Cars and Trucks* (May 1, 2025), https://perma.cc/B5LD-22LD; Ill. Corn Growers Ass'n, *California EV Mandates, Clean Air Act, and a Congressional Review Act Vote* (May 20, 2025), https://perma.cc/8YAS-6QZD. Indeed, these organizations regularly engage in litigation regarding motor vehicle emissions standards to protect their members from unlawful regulatory burdens, including

36

litigation challenging the Clean Air Act waivers disapproved by the Resolutions here. *See* Part I.B.1.iv, *infra.*

### *AmFree*

AmFree also has protectable interests sufficient for intervention as of right. AmFree represents a broad coalition of businesses—including motor vehicle dealers, fuel producers, and fleet operators—who have interests in defending the Resolutions similar to those described above.

For example, AmFree represents heavy-duty motor vehicle dealers, such as DiMartini RV Sales, whose interests in selling federally approved vehicles free from state emissions regulations are protected by section 209(a). *See* 3-ER-474. AmFree therefore has an interest in defending the Resolutions, which restore section 209(a)'s federal preemption. *See* Part I.B.1.ii., *supra.*

In addition, AmFree represents liquid fuel producers, such as ethanol-producer Lincolnway Energy, whose products are "target[s]" of California's programs. *Diamond Alt. Energy*, 606 U.S. at 115; *see* 3-ER-471–73. Those programs "explicitly seek to restrict the use of gasoline and other liquid fuels in automobiles." *Diamond Alt. Energy*, 606 U.S. at 114–15. AmFree therefore has a concrete interest in defending the Resolutions

37

that block those programs and so protect demand for its members' fuel products from state-ordered destruction. *Id.* at 107 n.1; *see* Part I.B.1.iii., *supra.*

AmFree also represents fleet operators (ultimate purchasers) who buy motor vehicles subject to California's programs. 3-ER-467. Electric vehicles often do not meet their needs, and so these members prefer to continue purchasing internal-combustion engine vehicles that meet federal standards, *id.*, a right protected by the Clean Air Act, *Engine Mfrs. Ass'n*, 541 U.S. at 255 (a "manufacturer's right to sell federally approved vehicles is meaningless in the absence of a purchaser's right to buy them"). But California's programs restrict availability of the new internal-combustion engine vehicles these members want to buy, and increase costs through higher electric vehicle purchase prices and costly infrastructure requirements. 3-ER-467–68. AmFree therefore has an interest in defending the Resolutions to protect its fleet operator members' right to purchase internal-combustion engine vehicles and avoid the "concrete" economic harms that California's programs impose. *Alisal Water Corp.*, 370 F.3d at 919.

38

Finally, AmFree has a protectable interest sufficient for intervention because, consistent with its free-market principles and mission, AmFree has actively supported and advocated for the national uniformity that the Resolutions restore. 3-ER-450–51, 3-ER-455, 3-ER-339. AmFree therefore is "entitled as a matter of right to intervene in an action challenging the legality of [the] measure[s] it has supported." *Idaho Farm*, 58 F.3d at 1397.

AmFree "even filed a suit" in this Court to invalidate the ACCII and Omnibus waivers, as did AFPM and API. *Idaho Farm*, 58 F.3d at 1398; *see AmFree v. EPA*, No. 25-89, and consolidated cases (Omnibus), and *AmFree v. EPA*, No. 25-106, and consolidated cases (ACC II). AmFree has also sued to enjoin enforcement of an agreement between a California officer and heavy-duty truck and engine manufacturers related to ACT and Omnibus. *AmFree v. Cliff*, No. 2:25-cv-3255 (E.D. Cal.). These suits were filed well before this case and seek to vindicate many of the same interests Appellants seek to protect here, including the ability of their members to purchase internal-combustion engine vehicles and sell fuel products.

Appellants' ability to protect those interests through judicial process may be impaired if they are unable to intervene here. "This litigation … must of necessity result in factual and legal determinations" related to the validity of the ACCII and Omnibus waivers that "when upheld by an appellate ruling will have a persuasive *stare decisis* effect in [Appellants'] parallel or subsequent litigation." *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988).[3] That is why this Court has held "that such a *stare decisis* effect is an important consideration" when evaluating intervention, *id.*, that "may … supply the requisite practical impairment warranting intervention as of right," *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986), *vacated on other grounds*, 480 U.S. 370 (1987). That this Court's ultimate disposition of this litigation may have *stare decisis* effects on Appellants' other cases already pending in this Court or in district courts in this Circuit make clear Appellants'

---

[3] The Resolutions are already at issue in the ACCII and Omnibus petitions pending before this Court. EPA, as defendant in those cases, has moved to dismiss on the grounds that the Resolutions, as federal legislation repealing the waivers, moot the challenges. *AmFree*, No. 25-89, ECF No. 31.1; *AmFree*, No. 25-106, ECF No. 33.1. Intervenors in those cases, which include California and all but one of the other Plaintiff States here, opposed dismissal, arguing that the Resolutions are unlawful for the same reasons they claim here. *AmFree*, No. 25-89, ECF No. 41.1; *AmFree*, No. 25-106, ECF No. 44.1.

entitlement to intervention. *See Sierra Club*, 995 F.2d at 1486 (granting intervention as of right where legal proceedings contemplated by the movant "would be constrained by the *stare decisis* effect of the lawsuit from which [the movant] has been excluded").

### 2. The District Court's Interest Analysis Ignores Appellants' Non-Economic Interests and Defies This Court's Precedent

The district court deemed Appellants' economic interests insufficient because it concluded they are "ancillary" to the "procedural" question at issue in the litigation, which it described as "whether Defendants' use of the CRA to disapprove the waivers was appropriate."[4] 1-ER-7–8. But the district court ignored Appellants' non-economic interests, and, in any event, the district court's atextual understanding of what qualifies as a sufficient interest for intervention as of right has been rejected by this Court twice-over.

---

[4] Appellants dispute the framing of the merits issue. The Resolutions are binding federal law regardless of what the CRA provides because "Congress complied with the process of bicameralism and presentment in enacting the Joint Resolution[s]." *Bernhardt*, 946 F.3d at 562. The only possible merits issue under this Court's precedent is whether the laws complied with the Constitution. And they did.

First, the district court considered only Appellants' "economic interests." 1-ER-7. It said nothing about the protectable non-economic interests raised by Appellants, including their right to buy and sell federally approved vehicles free from state compliance requirements and fines, 3-ER-454, 2-ER-276–78, 2-ER-187–89; their interests in defending measures they supported, 3-ER-455, 3-ER-339; and their interests in the *stare decisis* effects on pending litigation, 3-ER-455–56, 3-ER-340. The district court abused its discretion when it "failed to account for" Appellants' non-economic interests. *Cameron*, 595 U.S. at 279. Had it done so, it would have concluded that Appellants are entitled to intervene as of right. *See* Part 1.B.1, *supra*.

Second, this Court has rejected any atextual requirement that a movant's interests in the suit relate to the precise legal issue raised by a plaintiff, observing that "[t]here is no support for the … proposition that the intervenor's interest … [is] measured in relation to the particular issue before the court at the time of the motion and not in relation 'to the subject of the action' as provided in Rule 24." *Sagebrush Rebellion*, 713 F.2d at 528. This is based on a plain reading of Rule 24(a)(2), which requires the movant have an interest in the "transaction that is the subject

42

of the action," not in the specific issues surrounding that transaction raised by a plaintiff. Fed. R. Civ. P. 24(a)(2).

Focusing on the subject of the suit, not the legal theory raised, is also consistent with this Court's broader intervention jurisprudence, which doesn't "require that a prospective intervenor show that the interest he asserts is one that is protected by the statute under which the litigation is brought," much less that the interest is connected to the particular issue or theory advanced by a plaintiff. *Sierra Club*, 995 F.2d at 1484. Rather, it is "enough that the interest is protectable under *some law*"—not necessarily the law which gives rise to a plaintiff's claim—"and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (emphasis added).

The district court therefore erred by concluding that Appellants' undisputed concrete interests are insufficient because they are purportedly "ancillary to the actual issues raised" in the case. 1-ER-8. Plaintiffs cannot extinguish Appellant's significant protectable interests in the Resolutions, *see* Part I.B.1, *supra*, merely by advancing a particular legal theory for why those Resolutions are unlawful.

43

Moreover, by requiring intervenors to show an interest in Congress's use of CRA procedures, the district court effectively applied a per se rule against intervention by private parties in disputes about government procedure. By the district court's reasoning, for example, no private party would have a right to intervene in a case alleging violations of the Administrative Procedure Act ("APA"), because the legal issue would concern whether the government followed the proper procedure. That is just a different version of the "federal-defendant" rule that this Court en banc decisively rejected as inconsistent with Rule 24. *See Wilderness Soc'y*, 630 F.3d at 1177–80.

Historically, this Court's erstwhile federal-defendant rule categorically prohibited private parties "from intervening of right as defendants on the merits of NEPA actions." *Id.* "The rationale for this rule [was] that such parties lack a 'significantly protectable' interest warranting intervention of right under Rule 24(a)(2) because NEPA is a procedural statute that binds only the federal government." *Id.* In *Wilderness Society*, this Court abandoned that rule, holding that private parties have a right to intervene to defend government actions when they face a practical impairment of their interests, regardless of whether the legal claims

44

ostensibly target the government's procedures. *Id.* at 1179. As this Court explained, "the 'federal defendant' rule mistakenly focuses on the underlying legal claim instead of the property or transaction that is the subject of the lawsuit." *Id.* at 1178.

The district court's error here is precisely the same. The court mistakenly focused on Plaintiffs' underlying legal theory—premised on Congress's use of CRA procedures—"instead of the property or transaction that is the subject of the lawsuit"—the Resolutions. *Id.* And, although not explicitly stated, the district court's rationale appears also to be the same: Appellants "lack a 'significantly protectable' interest … because [the CRA] is a procedural statute that binds only the federal government." *Id.*; *see* 1-ER-7–8. That reasoning is irreconcilable with this Court's precedent.

### C. Federal Defendants Do Not Adequately Represent Appellants' Interests

Finally, the fourth part of the Ninth Circuit's test "is satisfied if the [party] shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Citizens for Balanced Use*, 647 F.3d at 898 (same). In assessing adequacy of

45

representation, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all of the proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted).

Where a movant "and an existing party share the same ultimate objective" or "the government is acting on behalf of a constituency that it represents," there is "a presumption of adequacy of representation" that must be rebutted with "a compelling showing." *Id.* (quotation marks omitted). Even where the presumption of adequacy applies, however, "the burden of showing inadequacy is 'minimal.'" *Berg*, 268 F.3d at 823 (citing *Trbovich*, 404 U.S. at 538 n.10, when evaluating adequacy of representation by government defendant).

Although Appellants presently "share the same ultimate objective with Federal Defendants" in dismissing the suit, 1-ER-8, Appellants have easily demonstrated inadequate representation under this Court's precedents.

46

## 1. *Divergence in Litigation Strategy and Arguments*

To overcome the presumption of adequacy, movants need not "anticipate specific differences in trial strategy." *Berg*, 268 F.3d at 824. "It is sufficient" to show that "it is likely that [Federal] Defendants will not advance the same arguments as" movants, *id.*, or "a likelihood that the government will abandon or concede a potentially meritorious" argument, *Lockyer*, 450 F.3d at 444.

No anticipation of divergent legal strategy is needed here. The Federal Defendants have *already* elected not to press a meritorious alternative argument advanced by Appellants in their proposed motions to dismiss, which could resolve the entire case: that EPA's waivers are "rules" as defined by the CRA and the APA and so are squarely among the agency actions suitable for expedited consideration under the CRA. *Compare* 3-ER-540–41, 3-ER-429, 2-ER-121–22, 2-ER-41–42 (Appellants' proposed motions to dismiss) *with* 2-ER-216 (Federal Defendants' motion to dismiss original complaint) *and* 2-ER-50 (Federal Defendants' motion to dismiss amended complaint). The district court's assertions that "[n]one of [Appellants'] arguments appear unique to them" and that Appellants' arguments "mirror those of Federal Defendants," 1-ER-8–9, are therefore

47

clearly erroneous. And the court's observation that none of Appellants' arguments are "tailored to their specific economic interests," 1-ER-9, is irrelevant.

Appellants have identified "arguments that [Federal Defendants] did not seek to raise in the proceedings below," *W. Watersheds Project*, 22 F.4th at 841, and so have shown that Defendants will not "undoubtedly make all of [Appellants'] arguments," *Citizens for Balanced Use*, 647 F.3d at 898. At the least by arguing that waivers are rules subject to the CRA, Appellants will "bring a point of view to the litigation not presented by either the plaintiffs or the defendants." *Lockyer*, 450 F.3d at 445. Appellants' argument is, at a minimum, "colorable," which is sufficient to show inadequate representation under Rule 24(a)(2). *W. Watersheds Project*, 22 F.4th at 841; *see also* 2-ER-129–32 (Letter from Russell T. Vought, OMB Dir., to Gene Dodaro, Comptroller Gen., explaining why the waivers are "rules" subject to the CRA).

### 2. *Divergence of Interests*

Federal Defendants' representation is also inadequate because they must represent "the broad public interest," including institutional interests, while Appellants represent "the more narrow, parochial" economic

48

and legal interests of their members. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173. These differing obligations may lead to divergent interests between Appellants and Federal Defendants that are sufficient to rebut the presumption of adequacy. *Berg*, 268 F.3d at 823–24.

This Court has regularly concluded that representation by a government party is inadequate where a movant articulates a specific, personal interest narrower than the government party's undifferentiated duty to the general public. *See, e.g., id.* at 823 (Fish and Wildlife Service "cannot be expected … to protect … private interests" of developer association intervenors); *Mendonca*, 152 F.3d at 1190 (inadequate representation where "employment interests of [union's] members were potentially more narrow and parochial than the interests of the public at large" represented by state agencies); *Forest Conservation Council*, 66 F.3d at 1489 (inadequate representation where U.S. Forest Service "is required to represent a broader view" than state and city intervenors); *cf. W. Watersheds Project*, 22 F.4th at 842 (inadequate representation where "[i]t is possible that [intervenor's] more narrow interests … informed by

49

specific regional and investment-related concerns, will differ from those of [an existing private party], which must necessarily take into account a more diffuse set of considerations"). In so doing, this Court is in good company. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973–74 (3d Cir. 1998); *Sierra Club v. Espy*, 18 F.3d 1202, 1207–08 (5th Cir. 1994); *see also Forest Conservation Council*, 66 F.3d at 1499 (collecting cases).

Here, Federal Defendants' primary obligation is to protect the prerogatives of Congress and the national government on behalf of the general public. Appellants' interests are far narrower and more specific: protecting their members' rights to sell and buy federally approved vehicles and ensuring their members are not subject to fines, product bans, mandates, or state-ordered destruction of demand for their products. In other words, Federal Defendants' interest is in defending the lawmaking process, while Appellants' interest is in ensuring California's programs remain federally preempted. Although "[t]here may be some overlap" in their present objective to dismiss the suit, Federal Defendants need not give Appellants' specific economic and legal concerns "the kind of primacy that [Appellants] would give them." *Fund for Animals*, 322 F.3d at 736.

50

This divergence in interests may give—indeed, likely already has given—rise to divergent litigation choices. *See* Part I.C.1, *supra.*

Federal Defendants and Appellants therefore do not have "sufficiently congruent interests" to ensure adequacy of representation, *Berg*, 268 F.3d at 823, and Appellants have met their "minimal" burden to show inadequate representation, *Sagebrush Rebellion*, 713 F.2d at 528.

### 3. *Risk of Federal Defendants' Reversal of Position*

Finally, the risk that Federal Defendants may reverse their position underscores the inadequacy in this particular case. Although "the mere change from one presidential administration to another" does not necessarily "give rise to intervention as of right," *Sagebrush Rebellion*, 713 F.2d at 529, Federal Defendants have a documented history of reversing their position regarding EPA waivers across different administrations, *see Diamond Alt. Energy*, 606 U.S. at 106–07. In the span of just over a decade, EPA granted a waiver for California's prior electric vehicle mandate, revoked it, and then reinstated it. *Id.* Given the intensely political nature of environmental policy and the specific history of these waivers, there is a distinct and non-speculative risk that Federal Defendants could in the future decline to defend the Resolutions, for

51

example, by declining to appeal an adverse ruling. *See Citizens for Balanced Use*, 647 F.3d at 898–99 (inadequate representation where the government might not appeal an adverse ruling).

The district court dismissed this risk as merely "theoretical," but this ignores the controlling standard. Under *Trbovich v. United Mine Workers of America*, Appellants need not prove that the government *will* abandon the defense; they need only show that representation "may be" inadequate. 404 U.S. at 538 n.10. Relying solely upon the current administration's defense of the Resolutions leaves Appellants exposed to a voluntary dismissal, settlement, or a "confession of error" by a future administration.

The district court's suggestion that Appellants could simply "renew their motions to intervene" at that future date does not justify denying a timely motion to intervene. 1-ER-9. By the time a policy shift occurs, the harm to Appellants' members may be a *fait accompli*, and Plaintiffs will no doubt argue that any such intervention is untimely. *See E. Bay Sanctuary Covenant*, 102 F.4th at 1001 ("We are unaware of any instance where a court has permitted intervention at the appellate stage while the case was held in abeyance to allow settlement negotiations."); *id.* at 1007

52

(VanDyke, J., dissenting) (noting the plaintiffs' argument that intervention was untimely even though the federal government now proposed settlement). Intervention is necessary now to ensure Appellants' interests are protected throughout the litigation.

*    *    *

Appellants easily satisfy the requirements of Rule 24(a)(2) to intervene as of right: Their motions were indisputably timely; they have multiple protectable economic and legal interests in the Resolutions that are the subject of this case and that may be impaired; and Federal Defendants already have not adequately represented Appellants' interests by failing to raise a meritorious argument. The district court erred in concluding otherwise, and the decision below denying intervention as of right should be reversed.

## II. The District Court Abused Its Discretion When Denying Permissive Intervention

Although district courts possess broad discretion under Rule 24(b), that discretion is not unlimited. A court "fails to exercise its discretion soundly when it bases its ruling on an erroneous view of the law." *Cameron*, 595 U.S. at 279 (cleaned up); *see also Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).

53

"[T]hat is what happened here." *Cameron*, 595 U.S. at 279. The district court's denial of permissive intervention provided limited reasoning and rested on the mistaken premise that Appellants' interests were "adequately represented by Federal Defendants." 1-ER-10. Because Appellants satisfy the requirements for permissive intervention and the court's discretionary refusal was based on a bare-bones finding of adequacy that is legally erroneous and clearly contradicted by the record, the order must be reversed.

## A. Appellants Satisfy the Requirements for Permissive Intervention

Rule 24(b)(1)(B) provides that anyone "who … has a claim or defense that shares with the main action a common question of law or fact" may intervene with the Court's permission. Fed. R. Civ. P. 24(b)(1)(B). This "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc.*, 644 F.3d at 843 (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). Appellants easily satisfy all three requirements.

54

First, "the independent jurisdictional grounds requirement does not apply … in federal-question cases when the proposed intervenor is not raising new claims." *Id.* at 844. This is a federal-question-jurisdiction case, and Appellants seek only to defend the challenged federal Resolutions against Plaintiffs' claims. No independent jurisdictional showing is required.

Second, the motions were timely. As explained in Part I.A, *supra*, Appellants moved to intervene at the earliest stage of litigation, before Federal Defendants had even filed a responsive pleading or motion. No one disputes timeliness.

Third, Appellants' defenses share common questions of law with the main action. Appellants seek to defend the legal validity of the Resolutions and the applicability of the CRA to EPA waivers. These are the legal questions raised by Plaintiffs' complaint. Accordingly, Appellants squarely meet the textual requirements of Rule 24(b).

## B. The District Court's Denial Rested Upon Legal and Factual Errors

The district court denied permissive intervention because it found that "allowing [Appellants] to intervene would needlessly complicate case management … *since their interests are already adequately represented*

55

*by Federal Defendants.*" 1-ER-10 (emphasis added). The court cited no case in support and made no other findings on permissive intervention. This was an abuse of discretion.

Although a district court may consider various factors in exercising its discretion under Rule 24(b), it cannot base its ruling on a legal error or a clear factual mistake. *Cameron*, 595 U.S. at 279; *Freedom from Religion Found., Inc.*, 644 F.3d at 843. Here, the district court's reasoning for denying permissive intervention rested upon its prior legal conclusion that Federal Defendants adequately represent Appellants. But as detailed in Part I.C, *supra*, the court's finding regarding adequacy of representation was legally and factually erroneous, and therefore the district court abused its discretion.

Because the district court's denial of permissive intervention rested upon a legally erroneous premise, that was, itself, based on mistakes of law and fact, its derivative conclusion that permissive intervention was unwarranted cannot stand. Thus, to the extent any Appellant is not entitled to intervene as of right, the Court should remand so the district court can reconsider permissive intervention free from this legally and factually erroneous premise.

56

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order, hold that Appellants have a right to intervene, or otherwise remand so that the district court may reconsider the motions for permissive intervention free from legal and factual error.

February 25, 2026

Respectfully Submitted,

*/s/ Rachel Levick*
Raymond B. Ludwiszewski
Rachel Levick
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
Tel.: (202) 955-8500
Fax: (202) 467-0539
rludwiszewski@gibsondunn.com
rlevick@gibsondunn.com

Sean Howell
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
  Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8355
Fax: (415) 801-7364
showell@gibsondunn.com

*Counsel for The Alliance for*
*Automotive Innovation and*
*The National Automobile Dealers*
*Association*

*/s/ Michael Buschbacher*
Michael Buschbacher
James R. Conde
Laura B. Ruppalt
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
  Suite 900
Washington, D.C. 20006
Tel.: (202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com

*Counsel for American Free*
*Enterprise Chamber of Commerce,*
*Illinois Corn Growers Association,*
*Indiana Corn Growers Association,*
*Iowa Corn Growers Association,*
*Kansas Corn Growers Association,*
*Kentucky Corn Growers Association,*
*Michigan Corn Growers Association,*
*Missouri Corn Growers Association,*
*Nebraska Corn Growers Association,*
*Tennessee Corn Growers Associa-*
*tion, Texas Corn Producers,*
*Wisconsin Corn Growers Associa-*
*tion, and National Corn Growers*
*Association*

58

/s/ Katherine C. Yarger

Katherine C. Yarger
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lkcfirm.com
Tel.: (512) 693-8350
Fax: (512) 727-4755

Steven P. Lehotsky
Michael B. Schon
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue NW
 Suite 700
Washington, DC 20001
steve@lkcfirm.com
mike@lkcfirm.com
Tel.: (512) 693-8350
Fax: (512) 727-4755

*Counsel for American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and the National Association of Convenience Stores*

59

## STATEMENT OF RELATED CASES

I am aware of one or more related cases currently pending in this court:

1. *California, et al. v. W. States Trucking Ass'n, et al.*, No. 25-8013 (consolidated with Nos. 26-88, 26-497, 26-525). An appeal from the same underlying district court order.

2. *AmFree v. EPA*, No. 25-89, and consolidated cases (Omnibus), and *AmFree v. EPA*, No. 25-106, and consolidated cases (ACC II). These petitions for review, filed before the joint resolutions became law, challenge EPA's issuance of two of the three Clean Air Act waivers that Plaintiffs seek to resurrect. EPA has moved to dismiss these petitions as moot, on grounds that the Resolutions invalidate the waivers. Ten of eleven Plaintiff States—who are intervenor-defendants in one petition and movant-intervenors in the others—have opposed dismissal, raising arguments identical to their claims in this case.

February 25, 2026

Respectfully submitted,

*/s/ Michael Buschbacher*
Michael Buschbacher

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-88, 26-497, 26-525

I am the attorney or self-represented party.

**This brief contains** 10,313 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

- [ ] it is a joint brief submitted by separately represented parties.
- [ ] a party or parties are filing a single brief in response to multiple briefs.
- [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Michael Buschbacher   **Date** 2/25/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*