**Nos. 25-8013, 26-88, 26-497, 26-525**

---

# In the United States Court of Appeals
# For the Ninth Circuit

---

**STATE OF CALIFORNIA, ET AL.,**
*Plaintiffs-Appellees,*

**v.**

**UNITED STATES OF AMERICA, ET AL.,**
*Defendants,*

**WESTERN STATES TRUCKING ASSOCIATION, ET AL.,**
*Movant-Intervenor Defendants-Appellants.*

---

On Appeal from the U.S. District Court
for the Northern District of California
4:25-cv-04966-HSG; Hon. Haywood S. Gilliam, Jr.

---

**JOINT REPLY BRIEF FOR APPELLANTS
IN CASE NOS. 26-88, 26-497, 26-525**

---

Raymond B. Ludwiszewski
Rachel Levick
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
Tel.: (202) 955-8500

Michael Buschbacher
James R. Conde
Laura B. Ruppalt
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
 Suite 900
Washington, D.C. 20006
Tel.: (202) 955-0620

*Additional counsel listed inside*

Sean Howell
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
 Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8355

Katherine C. Yarger
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Tel.: (512) 693-8350

Steven P. Lehotsky
Michael B. Schon
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW
 Suite 700
Washington, DC 20001
Tel.: (512) 693-8350

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................ 2

    I.    Joint Intervenors Have a Protectable Interest That May Be Practically Impeded ........................................................ 2

        A.    Joint Intervenors' Interests Are Protected and Related to the Challenged Resolutions ........................ 2

        B.    Joint Intervenors' Interests in Preemption May Be Impeded by the Disposition ........................................ 18

    II.    Federal Defendants Do Not Adequately Represent Joint Intervenors' Interests ........................................................ 23

        A.    Joint Intervenors and Federal Defendants Have Different Interests That Have Already Led Parties to Advance Different Arguments ................................ 25

        B.    Joint Intervenors Provide a Necessary Argument ...... 31

        C.    The Risk of Reversal by Federal Defendants Supports Inadequacy ................................................ 33

    III.    The District Court Abused Its Discretion When Denying Permissive Intervention ........................................................ 35

CONCLUSION ........................................................................ 36

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Auto. Mfrs. Ass'n v. Cahill,*
  152 F.3d 196 (2d Cir. 1998) ..................................................5

*Am. Auto. Mfrs. Ass'n v. Mass. Dep't of Env't Prot.,*
  163 F.3d 74 (1st Cir. 1998) ..................................................6

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003)........................................ 8, 30

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015)..............................................................7

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.,*
  208 F.3d 1 (1st Cir. 2000) ....................................................5

*Berger v. N.C. State Conf. of the NAACP,*
  597 U.S. 179 (2022)................................................. 15, 23, 24

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,*
  54 F.4th 1078 (9th Cir. 2022) ..............................................9

*Callahan v. Brookdale Senior Living Cmtys., Inc.,*
  42 F.4th 1013 (9th Cir. 2022) ............................................23

*Chevron USA Inc. v. Plaquemines Parish,*
  No. 24-813, slip. op. (U.S. Apr. 17, 2026) ............................3

*County of Fresno v. Andrus,*
  622 F.2d 436 (9th Cir. 1980)..............................................14

*Crossroads Grassroots Pol'y Strategies v. FEC,*
  788 F.3d 312 (D.C. Cir. 2015) ..............................................8

*Ctr. for Biological Diversity v. Bernhardt,*
  946 F.3d 553 (9th Cir. 2019)..............................................19

ii

*Diamond Alt. Energy, LLC v. EPA*,
  606 U.S. 100 (2025)..........................................................................8

*E. Bay Sanctuary Covenant v. Biden*,
  102 F.4th 996 (9th Cir. 2024) ..........................................................8

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
  541 U.S. 246 (2004).................................................................5, 6, 7

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995)......................................................17, 29

*Greene v. United States*,
  996 F.2d 973 (9th Cir. 1993)..........................................................22

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995)..........................................................13

*Marinello v. United States*,
  584 U.S. 1 (2018)..........................................................................18

*Moore v. N.Y. Cotton Exch.*,
  270 U.S. 593 (1926)........................................................................2

*Nat'l Meat Ass'n v. Harris*,
  565 U.S. 452 (2012)........................................................................6

*Nelson v. Adams USA, Inc.*,
  529 U.S. 460 (2000)......................................................................10

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998)..........................................................................5

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983).............................................16, 34, 35

*Shelby County v. Holder*,
  570 U.S. 529 (2013)......................................................................11

*Sierra Club v. EPA*,
  995 F.2d 1478 (9th Cir. 1993)...........................3, 4, 11, 16, 17, 19, 22

iii

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001)..........................................................8, 17

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).......................................................................8

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972)......................................................................33

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002)...................................... 21, 30, 32, 35, 36

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988)..........................................................28

*United States v. Wahchumwah*,
   710 F.3d 862 (9th Cir. 2013)..........................................................32

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., &*
   *Prods. Liab. Litig.*,
   959 F.3d 1201 (9th Cir. 2020).......................................................5, 11

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ................................................. 27, 28, 31

*Yesler Terrace Cmty. Council v. Cisneros*,
   37 F.3d 442 (9th Cir. 1994)............................................................31

*Yim v. City of Seattle*,
   No. C18-0736, 2018 WL 6650794 (W.D. Wash. Dec. 19, 2018)..........33

**Statutes**

5 U.S.C. § 801(b)(2) ...............................................................................12

42 U.S.C. § 7543(a) ..................................................................................4

42 U.S.C. § 7543(b) ................................................................................12

42 U.S.C. § 7607(b) ...........................................................................12, 20

iv

## Other Authorities

7C Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* (3d ed. 2008)....................................25

Fed. R. App. P. 15(d) .............................................................. 20

Fed. R. Civ. P. 12(h)(2)(C) ........................................................27

Fed. R. Civ. P. 24(a)(2) ........................................................ 2, 3, 17, 18

U.S. Dep't of Just., *Letters Submitted to Congress Pursuant
to 28 U.S.C. § 530D*, https://perma.cc/66T7-P453 (updated
Apr. 7, 2026).................................................................34

## INTRODUCTION

California and its allied States ("Plaintiff States") attempt to complicate this appeal, but its resolution is straightforward under the text of Rule 24(a)(2) and this Court's precedent.

Joint Intervenors (automakers, vehicle dealers, and fuel producers and marketers) have obvious legally protectable interests in the validity of the Congressional Review Act ("CRA") Resolutions at issue in this case. These Resolutions, passed by Congress and signed by the President, restore Clean Air Act preemption of state mandates that attempt to ban some of Joint Intervenors' members' products. A judgment declaring the Resolutions void would impede those members' legal and economic interests in that preemption. And the federal government does not represent their commercial interests. So Joint Intervenors satisfy Rule 24(a)(2).

To deny the obvious, Plaintiff States distort Rule 24(a)(2)'s text and this Court's precedent and mischaracterize Joint Intervenors' interests in defending the Resolutions. Failing all else, they seek to dissect the same interests to claim meritless process fouls. These tactics should not obscure the truth: Under Rule 24(a)(2) and this Court's liberal precedent, intervention is warranted.

1

# ARGUMENT

## I.   Joint Intervenors Have a Protectable Interest That May Be Practically Impeded

Plaintiff States oppose Joint Intervenors' interests on four misplaced grounds. First, they argue that Joint Intervenors' interests don't relate to the "claims" in this suit because they say Joint Intervenors allege only "contingent, attenuated" economic interests in the "follow-on effects" of the case. States.Br.19. Second, they argue that Joint Intervenors' real interests can be vindicated by challenging EPA's compliance with the Clean Air Act's waiver criteria. *Id.* at 22–23. Third, they argue that Joint Intervenors have no protectable interests at all. *Id.* at 31–37. And finally, Plaintiff States assert that Joint Intervenors' arguments are forfeited. *Id.* at 31, 35.

Plaintiff States' arguments fail.

### A.   Joint Intervenors' Interests Are Protected and Related to the Challenged Resolutions

Rule 24(a)(2) requires an intervenor have "an interest relating to the … transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). A "transaction" refers to the "occurrences" giving rise to a claim. *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926). As Plaintiff States concede, "the subject of Plaintiff States' challenge"—*i.e.*, the

2

transactions—are the "the congressional resolutions." States.Br.20. Joint Intervenors must therefore have an interest "relating to" the Resolutions. Fed. R. Civ. P. 24(a)(2). "The phrase 'relating to' sweeps broadly." *Chevron USA Inc. v. Plaquemines Parish*, No. 24-813, slip. op. at 7 (U.S. Apr. 17, 2026). It requires only "some relation" or "connection." *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). It is "enough that the interest is protectable under *some law*"—so long as the law has a connection to the transaction. *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993) (emphasis added).

Joint Intervenors satisfy this test. First, Joint Intervenors' interests—in preemption of state emissions regulations and the attendant economic and legal consequences to their members—are protected by the Clean Air Act's preemption of state law. Second, these interests obviously have "some connection" to the Resolutions—the purpose and effect of the Resolutions is to restore that preemption for Advanced Clean Cars II ("ACCII"), Advanced Clean Trucks ("ACT"), and the Omnibus Low $NO_x$ Program ("Omnibus").

Plaintiff States' arguments to the contrary are wrong because they focus on the legal arguments Plaintiff States advance, instead of on the

3

subject of the suit—the validity of the Resolutions, which restore preemption for ACCII, ACT and Omnibus. Joint Intervenors plainly have an interest in that subject that may be impaired if State Plaintiffs win.

### i. *Joint Intervenors Have an Interest in Preemption that the Resolutions Restore*

"In this case the law protecting [Joint Intervenors'] interest is the Clean [Air] Act itself" and the Resolutions, which restore those protections. *Sierra Club*, 995 F.2d at 1485. Section 209(a) of the Clean Air Act preempts state regulations that lack a valid EPA waiver. 42 U.S.C. § 7543(a). As Plaintiff States recognize, this provision protects economic interests. States.Br.32 (the "right to buy and sell" is a right "to engage in *economic* transactions"). Plaintiff States therefore don't move the needle by characterizing Joint Intervenors' interests as an interest in avoiding "economic impacts." *Id.* at 18. The relevant question is whether Section 209(a)'s preemption—and the Resolutions that restore it—protect their interests, economic or otherwise. *See Sierra Club*, 995 F.2d at 1485–86. They do.

Automakers fall within Section 209(a)'s protection, as Plaintiff States concede. States.Br.33–34. Section 209(a) creates a right to sell federally approved new motor vehicles to an "ultimate purchaser" free from

preempted state emission controls, which of course protects automakers producing and distributing new motor vehicles. Joint.Br.26, 30. Automakers have invoked this protection in scores of cases. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1218 (9th Cir. 2020); *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 255 (2004); *Am. Auto. Mfrs. Ass'n v. Cahill*, 152 F.3d 196, 200 (2d Cir. 1998); *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1, 6–7 (1st Cir. 2000). Plaintiff States admit that "Congress designed Section 209" to address "manufacturers' concerns." States.Br.33–34. That concedes the interest of the Alliance for Automotive Innovation ("Auto Innovators").

Plaintiff States, however, argue that Section 209(a) doesn't protect anyone else, including "vehicle dealers, fuel suppliers, and purchasers," because protecting these entities wasn't Congress' central focus. *Id.*

This argument is atextual. "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998), and that is what Section 209(a) does. Section 209(a) doesn't create an exclusive privilege reserved for manufacturers alone. It states a categorical prohibition that

5

protects all "new motor vehicles" from regulation, up to and including the sale to an ultimate purchaser. Joint.Br.30. After all, a "manufacturer's right to sell federally approved vehicles is meaningless in the absence of a purchaser's right to buy them." *Engine Mfrs. Ass'n*, 541 U.S. at 255. Section 209(a) therefore protects all entities selling and buying new motor vehicles: automakers, dealers, and ultimate purchasers, including members of the National Automobile Dealers Association ("NADA"), the American Free Enterprise Chamber of Commerce ("AmFree"), the American Fuel & Petrochemical Manufacturers ("AFPM"), the American Petroleum Institute ("API"), and the National Association of Convenience Stores ("NACS"). Joint.Br.30, 38, 42, 50; 3-ER-388; 3-ER-392; 3-ER-396; *see also, e.g., Am. Auto. Mfrs. Ass'n v. Mass. Dep't of Env't Prot.*, 163 F.3d 74, 76 (1st Cir. 1998) (preemption suit brought by, among others, motor vehicle dealers); 3-ER-455 (discussing AmFree preemption suit).

Holding that dealers or purchasers are unprotected by Section 209(a) would "make a mockery of the [Clean Air Act's] preemption provision." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 464 (2012). If that were true, States could circumvent Section 209(a)'s preemption and control new motor vehicle emissions simply by regulating dealers or fleets, as the

Supreme Court has recognized. *Engine Mfrs. Ass'n*, 541 U.S. at 255.

Further, as a practical matter, these entities bear much of the cost of the mandates. Without the Section 209(a) preemption restored by the Resolutions, dealers will be "forced to stock electric vehicles that are slower to sell." Joint.Br.31. Or in some cases, they will be unable to secure California-approved engines and vehicles to sell at all. *See* 3-ER-479 ("There are presently no electric powertrain options for RV chassis.").

Whether protecting these entities was the principal evil Congress focused on when enacting Section 209(a) is therefore irrelevant. Indeed, Section 209(a) is a categorical prohibition, so it protects anyone with standing to sue state officials in equity to restrain a violation of Section 209(a). *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). Here, that also includes fuel producers and marketers, whose liquid fuel products are targeted by ACCII, ACT, and Omnibus. Joint.Br.32–36. That Section 209(a) doesn't mention "fuel products" is irrelevant. States.Br.34 n.16. Fuel suppliers could sue under Section 209(a) to redress injuries caused by ACCII, ACT, or Omnibus, so they "have a stake in the outcome" of this litigation and their interests in preemption and the attendant economic and legal consequences is

7

protectable. *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003).

Plaintiff States don't dispute that, under *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100 (2025), fuel producers and marketers would have standing to assert preemption of ACCII or ACT. Joint.Br.32–35. Instead, Plaintiff States argue that "standing is a separate inquiry not relevant here." States.Br.21. But Plaintiff States are wrong. That standing is not *necessary* for intervention, Joint.Br.19–20, does not mean that standing is not *relevant*. This Court's caselaw recognizes the commonsense overlap between standing and the required "interest" for intervention. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001). Other circuits do as well. For example, in the D.C. Circuit, when a movant "has constitutional standing, it *a fortiori* has 'an interest relating to the property or transaction which is the subject of the action.'" *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015).

There is little apparent daylight between Article III's requirement of "concrete harm," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021), and this Court's recognition that an economic interest suffices for intervention when it is "concrete," *E. Bay Sanctuary Covenant v. Biden*,

8

102 F.4th 996, 1002 (9th Cir. 2024) (citation omitted). If anything, Article III standing is often stricter in practice: The "public interest group[s]" that this Court routinely allows to intervene as of right based on past advocacy generally lack standing. *See* Joint.Br.24–25. At most, Rule 24(a)(2) requires a movant to additionally identify a source of legal protection. *See Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022). Fuel producers and marketers satisfy that requirement: Section 209(a) protects them from state regulations that target liquid fuels by banning or curtailing internal-combustion engines and vehicles, and the Resolutions challenged here restore Section 209(a)'s protections.

Plaintiff States also claim process fouls. They claim that "while Joint Intervenors now focus on [the right to buy and sell vehicles under Section 209(a)] on appeal, they failed to sufficiently raise it before the district court, if at all." States.Br.31. That is incorrect. The motion of Auto Innovators and NADA expressly identified Section 209(a) as the source of legal protection. 2-ER-277 ("Auto Innovators' members are thus directly impacted by EPA's grant of a waiver for California's ACC II regulations, and their interests are directly protected by the preemptive effect

9

of Section 209(a)."). So did AmFree's motion. 3-ER-454 (AmFree's members "have a right not to be injured by preempted state standards" (citing 42 U.S.C. § 7543(a); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 (1989)). AmFree even noted that it is currently invoking this protection by suing California officials for violating Section 209(a). 3-ER-451. Fuel producers and marketers similarly noted that they were intervening to vindicate their interest in "preserv[ing] the uniform national framework established by the Clean Air Act," a clear reference to Section 209(a). 3-ER-377.

It makes no difference that the motions didn't use the magic words "right to buy and sell." States.Br.31. Preserving an issue "does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue." *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000). Joint Intervenors did just that. Nor does it matter whether Joint Intervenors framed their interests as "economic." States.Br.31–32. As Plaintiff States point out, Section 209(a) protects "*economic* transactions." *Id.* at 32. Whether labeled as economic or not, the district court ignored the Joint Intervenors' protectable preemption interests under Section 209(a), which the

10

CRA Resolutions restore. Joint.Br.42.

Plaintiff States seek to recast Joint Intervenors' asserted interests as an interest in being free from *"any* state regulation at all." States.Br.33. Joint Intervenors nowhere argue that Section 209(a) enshrines the Virginia Plan's proposal to "negative" all state laws. *See Shelby County v. Holder*, 570 U.S. 529, 542 (2013). Section 209(a)'s protection is not unlimited. *See In re Volkswagen*, 959 F.3d at 1218 (Section 209(a) did not cover "anti-tampering rules as applied to post-sale vehicles"). But an interest doesn't have to be unlimited to be protected. The Clean Water Act doesn't guarantee permit holders freedom from "any … regulation at all"—quite the opposite. States.Br.33 (emphasis removed). And yet, permit holders have a protected right to intervene in lawsuits brought against the government that may result in more burdensome permits. *Sierra Club*, 995 F.2d at 1485–86.

Plaintiff States further attempt to conflate Joint Intervenors' asserted interests in the preemption secured by the Resolutions with their separate interests in "the lawfulness of EPA's decisions to issue the waivers at all." States.Br.17. Joint Intervenors agree that this case is not about "'whether EPA's earlier decision to issue the waivers' to California

11

was 'itself lawful, prudent, or good policy.'" *Id.* at 16 (quoting 1-ER-7). Congress has *already* decided that the waivers at issue are imprudent and bad policy—by enacting the Resolutions. Consequently, Joint Intervenors' interests here lie not in EPA's compliance with the Clean Air Act's criteria for granting the waivers in the first place, *see* 42 U.S.C. § 7543(b), but in defending the Resolutions that invalidated the waivers after they were granted. This is demonstrated by Joint Intervenors' responsive pleadings and motions to dismiss, all of which defend *the Resolutions* that protect Joint Intervenors' legal and economic interests.

To be sure, some Joint Intervenors rely upon the Clean Air Act's judicial review provision, *id.* § 7607(b), as an *additional* protection. States.Br.34–35. But Plaintiff States miss the point. Under the Resolutions, EPA is precluded from issuing a waiver "in substantially the same form" as those invalidated by the Resolutions unless "specifically authorized by a law enacted after the date of the joint resolution," 5 U.S.C. § 801(b)(2), which means no more waivers for substantially similar state electric-vehicle mandates. The judicial review provision allows Joint Intervenors to enforce that prohibition against EPA, which is based upon the Resolutions challenged here, not the Section 209(b) waiver criteria.

12

Plaintiff States also try to splinter the Joint Intervenors' interests, claiming that Joint Intervenors have forfeited an argument that they are beneficiaries of the Resolutions. States.Br.35–37. But being a beneficiary of the Resolutions is just another way of saying that Joint Intervenors have interests in preemption of ACCII, ACT, and Omnibus, not an independent legal theory that can be forfeited. Joint.Br.34–35. Because the Resolutions restore federal preemption of ACCII, ACT, and Omnibus, and prevent EPA from issuing substantially similar waivers, Joint Intervenors are beneficiaries of the Resolutions.

Plaintiff States also complain that only some Joint Intervenors pointed out their advocacy in support of the Resolutions before the district court. States.Br.27. But Joint Intervenors' advocacy efforts, although a sufficient interest under this Court's caselaw, *see Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397–98 (9th Cir. 1995), also separately underscore Joint Intervenors' economic and legal interests, which indisputably have not been forfeited.

Last, Plaintiff States resort to slippery slope arguments. They complain that recognizing Joint Intervenors' interests would mean that "every individual and business involved at every stage of the vehicle and

13

fuel industry—from manufacturing to fueling to purchase—could claim a protectable interest in the case." States.Br.38. And they claim this approach is "uncabined." *Id.* at 39.

Not so. Section 209(a)'s protection is broad but not limitless. And the breadth was Congress' deliberate choice. If Plaintiff States don't like Section 209(a), then they can ask Congress to amend it. And if they disagree with this Court's holding that "the 'interest' test is primarily a practical guide to disposing of lawsuits *by involving as many apparently concerned persons as is compatible with efficiency and due process,*" they can seek en banc review. *See County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (emphasis added) (citation omitted).

And of course, there are *other* guardrails on intervention by multiple overlapping intervenors, including the exception for adequately represented interests, which would prevent intervention by entities adequately represented by similarly situated trade groups. Moreover, as Plaintiff States note, courts can, and often do, impose "reasonable case management conditions." States.Br.10. Indeed, Joint Intervenors have voluntarily cooperated here to efficiently present issues to this Court. "Whatever additional burdens adding [Joint Intervenors] to this case

14

may pose, those burdens fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022).

What doesn't make sense is the district court's holding that under this Court's liberal approach, neither automakers, nor motor vehicle dealers, nor liquid fuel producers and marketers have any protectable interest in defending federal laws blocking state regulations that would ban their products. The slippery slope thus tilts the other way. If Joint Intervenors do not have protectable interests, then no one does.

### ii. The Interest in Preemption Relates to the Resolutions

Joint Intervenors' interests in Clean Air Act preemption have some connection to the "transaction"—the Resolutions. Those Resolutions invalidate EPA's preemption waivers and thus restore federal preemption under Section 209(a) for ACCII, ACT, and Omnibus. The connection is indisputable.

Plaintiff States dispute it anyway. States.Br.16–22. In doing so, however, they merely repeat the district court's mistake. The district court rejected Joint Intervenors' interests by asking the wrong question and requiring that Joint Intervenors show an interest in the "procedural"

15

issues raised by Plaintiff States. 1-ER-7–8. That focus on the issues raised, as opposed to the transaction that is the subject of the suit, was error. Joint.Br.42–45. Plaintiff States maintain the same mistaken focus, but instead of labeling their issues "procedural," 1-ER-7–8, they characterize the issues as, "from start to finish,… about the congressional resolutions' unconstitutionality and their infringement on Plaintiff States' rights," States.Br.19.

Federalism rhetoric doesn't fix the error. However the legal issues are framed, "[t]here is no support for [Plaintiff States'] proposition that the intervenor's interest [is] measured in relation to the particular issue before the court at the time of the motion and not in relation 'to the subject of the action,' as provided in Rule 24." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). "Yet that proposition, explicitly rejected in *Sagebrush Rebellion*, is necessary to [Plaintiff States'] argument in the case at bar." *Sierra Club*, 995 F.2d at 1484.

Plaintiff States similarly protest that Joint Intervenors' interests are focused not on the legal issues Plaintiffs States raise but on "the outcome of the case should Plaintiff States prevail—i.e., if they obtain a declaration that the congressional resolutions are invalid." States.Br.18.

Joint Intervenors' interests in preemption, they argue, will only be impaired "*if*" Plaintiff States win. *Id.*

But the point of Rule 24(a) is that interested movants don't have to bet the farm—or here, bet the industry—on an absentee win. The Rule entitles an interested person to intervene whenever "disposing of the action" without the person "*may* as a practical matter" impede the person's interest. Fed. R. Civ. P. 24(a)(2) (emphasis added); *see also Sierra Club*, 995 F.2d at 1485–86. Given this text, Joint Intervenors' interests in "the outcome of the case should Plaintiff States prevail," States.Br.18, is a feature of Rule 24(a)(2)'s focus on the potential disposition of the case, not a bug. It does not matter if enforcing the preempted regulations is only "'one of' Plaintiff States' goals." *Id.* at 19. Rule 24(a)(2) cares about concrete consequences—"the relief sought" by a plaintiff, not the plaintiff's professed "goal." *Berg*, 268 F.3d at 821; *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995) (harm from injunctive relief sought satisfies interest test of Rule 24(a)(2)), *partially abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (2011).

17

### B. Joint Intervenors' Interests in Preemption May Be Impeded by the Disposition

The next question is whether "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2).

Of course it would. Plaintiff States seek a judgment declaring the Resolutions "void" and of "no effect." 2-ER-177. As Plaintiff States concede, that disposition would "restore the status quo" before the Resolutions by reinstating EPA's waivers, States.Br.24, extinguishing Joint Intervenors' Clean Air Act preemption claims or defenses against ACCII, ACT, and Omnibus.

Rule 24(a)(2)'s text is not demanding. The Rule uses the permissive word "may," and requires only a "practical" impairment or impediment. Fed. R. Civ. P. 24(a)(2). "[I]mpede" is a "broad" term—a hindrance or obstacle qualifies as an impediment. *Marinello v. United States*, 584 U.S. 1, 7 (2018) (citing, among others, *Webster's New International Dictionary* 1248 (2d ed. 1957)). Joint Intervenors' interests in preemption would at the very least be hindered by a declaratory judgment declaring the Resolutions void.

Plaintiff States question the impediment anyway. *See*

18

States.Br.18–19, 21–24. First, they argue that the impediment here is too "attenuated." *Id.* at 19. Not so. A declaration voiding the Resolutions would directly extinguish Joint Intervenors' claims or defenses that the Resolutions mean that ACCII, ACT, and Omnibus are preempted by the Clean Air Act. Joint Intervenors' interests in preemption and the attendant consequences therefore will—not just "may," *Sierra Club*, 995 F.2d at 1486—be impeded if Plaintiffs succeed.

Second, Plaintiff States return to a favorite theme: arguing that what Joint Intervenors *really* are interested in is EPA's compliance with the Clean Air Act's waiver criteria and suggesting that interest is protected through different cases pending in this Circuit. States.Br.23. This attempted deflection fails.

Whether the now-invalidated waivers satisfied the criteria under Section 209(b) of the Clean Air Act is entirely distinct from the question of whether the Resolutions are somehow unconstitutional. Congress is free to invalidate agency actions that would otherwise be perfectly legal. And a party that benefits from a CRA resolution is entitled to intervene in its defense. *See, e.g., Ctr. for Biological Diversity v. Bernhardt,* 946 F.3d 553, 559 n.5 (9th Cir. 2019) (hunting groups intervened in defense

19

of CRA resolution invalidating an agency rule limiting hunting access).

Moreover, and as Plaintiff States explain, this Court is holding challenges to EPA's waivers in abeyance pending this litigation, so those cases offer Joint Intervenors no chance to defend the Resolutions. States.Br.24 n.10. It is therefore evident "which interests Joint Intervenors seek to protect here, but *not* in those other cases," *id.* at 23—their interests in defending the preemption restored by the Resolutions. Indeed, several Joint Intervenors—including Auto Innovators and NADA— are not even parties to the EPA waiver challenges and may be unable to become parties. *See* 42 U.S.C. § 7607(b) (60 days to petition for review); Fed. R. App. P. 15(d) (30 days to intervene). The challenge to EPA's waivers therefore offers Auto Innovators and NADA no path to defending the Resolutions and asserting that ACCII, ACT, and Omnibus are now preempted by virtue of the Resolutions themselves.

Plaintiff States also point out that even if they prevail here, parties challenging EPA's compliance with the Clean Air Act's criteria could succeed in having all three waivers covered by the Resolutions declared arbitrary and capricious, vindicating those parties' interests in preemption. States.Br.22–23. "This analysis is flawed because the relevant inquiry is

20

whether the [suit's disposition] 'may' impair rights 'as a practical matter' rather than whether [it] will 'necessarily' impair them." *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002) (quoting Fed. R. Civ. P. 24(a)(2)). Indeed, it is doubly flawed because Plaintiff States ignore the word "impede"—voiding the Resolutions is plainly a hindrance to Joint Intervenors' interests in preemption. "Maybe you'll get what you want for other reasons in another case" is not a reason to deny intervention here.

In any event, a ruling in Plaintiff States' favor would have swift and substantial consequences for Joint Intervenors. Declaratory relief voiding the Resolutions would immediately subject Joint Intervenors to significant fines, as well as product bans and mandates. Plaintiff States attempt to minimize these irreparable harms as "interim impacts." States.Br.23. But suffering fines, bans, and mandates is a practical impediment, even if some parties succeed in later suits challenging EPA's waivers.

Not just Rule 24(a)(2)'s text, but binding precedent requires rejecting Plaintiff States' argument. This Court rejected an identical argument in *Sierra Club*, a case that Plaintiff States don't attempt to distinguish.

21

There, Sierra Club argued "that to the extent the relief it seeks may affect the [regulated party], the [regulated party] could protect its interests in subsequent administrative or judicial proceedings, so the [regulated party's] interests would not be impaired by this litigation." *Sierra Club*, 995 F.2d at 1486. But "the relief sought by the Sierra Club would constrain the EPA, which would not then be free to violate the terms of the declaratory and injunctive relief in later administrative proceedings," to the detriment of the regulated party. *Id.* Here, as there, it is enough that this case would have "controlling force on" the validity of the Resolutions and bind EPA, to Joint Intervenors' detriment. *Id.*

By contrast, Plaintiff States' only supporting authority, *Greene v. United States*, 996 F.2d 973 (9th Cir. 1993), is inapposite. There, this Court held that a tribe's action seeking recognition under federal law wasn't related to—and so did not impede—another tribe's interest in claiming fishing rights under a treaty because the first tribe's recognition had no bearing on the second tribe's fishing rights. *Id.* at 976–77. Here, in contrast, the Resolutions do bear on whether ACCII, ACT, and Omnibus are preempted—indeed, preempting those rules is the *entire point* of the Resolutions.

\* \* \*

Plaintiff States ask this Court to rewrite the text of Rule 24(a)(2) to allow intervention as of right only when a movant:

> claims an interest relating to the … ~~transaction~~ **[legal issue]** that is ~~the subject of the action~~ **[raised by the plaintiff]**, and is so situated that disposing of the action ~~may~~ **[will]** as a ~~practical~~ **[formal]** matter **[necessarily]** impair ~~or impede~~ the movant's ability to protect its interest, ….

This Court should reject this attempt to refashion Rule 24(a)(2).

## II. Federal Defendants Do Not Adequately Represent Joint Intervenors' Interests

Plaintiff States perpetuate the district court's legal error "by setting the intervention bar too high" when it comes to the last prong of intervention as of right—inadequacy of representation. *Berger*, 597 U.S. at 200 n.\* (cleaned up).

As an initial matter, Joint Intervenors did not "concede" that the presumption of adequacy applies, *contra* States.Br.39, but set forth this Court's existing caselaw, *see* Joint.Br.45–46. This Court has rightly questioned whether the portions of this Court's presumption-of-adequacy caselaw invoked by Plaintiff States survived *Berger*. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022) (*Berger* "calls into question whether the application" of a

23

presumption of adequate representation "is appropriate" merely because parties "have the same ultimate objective."). There is a strong argument that it did not. As *Berger* observes, in *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), the Court "rejected" a presumption of adequate representation by a government party even though "[a]t a high level of abstraction" the movant's and government's interests "might have seemed closely aligned." *Berger*, 597 U.S. at 195–96. That's indistinguishable from the presumption Plaintiff States ask this Court to apply.

To the extent there is any presumption, it is not the obstacle that Plaintiff States think. Where, as here, movants seek to intervene in support of the federal government to protect their "related" but "not 'identical'" interests, the burden to show inadequacy is "minimal," *id.*, as Plaintiff States themselves regularly assert when seeking intervention in support of the federal government to defend EPA's waivers, *see, e.g.*, Mot. to Intervene at 10, *AmFree v. EPA*, No. 25-106 (9th Cir. Jan. 15, 2025), ECF No. 8.1; Mot. to Intervene at 11, *AmFree v. EPA*, No. 25-89 (9th Cir. Jan. 15, 2025), ECF No. 5.1.

Joint Intervenors easily satisfy this burden, to the extent they even

bear it. *See* Joint.Br.45–53.[1] That is because Joint Intervenors' interests diverge from Federal Defendants,' those differences have already produced distinct arguments that Joint Intervenors would press, and the history of agency reversals creates a concrete risk that Federal Defendants' position may shift, leaving those interests inadequately represented.

## A. Joint Intervenors and Federal Defendants Have Different Interests That Have Already Led Parties to Advance Different Arguments

As Plaintiff States have elsewhere explained, "[i]t is sufficient to show that, due to differences in interests, it is likely that the parties will not advance the same arguments as the proposed intervenor." Mot. to Intervene, *AmFree*, No. 25-106, *supra*, at 11 (citing *Berg*, 268 F.3d at 823–24); Mot. to Intervene, *AmFree*, No. 25-89, *supra*, at 11 (same). Contrary to Plaintiff States' claim here, Appellants *have* explained "how their interests diverge from the federal government's," States.Br.47: "Appellants

---

[1] Under Rule 24(a)(2)'s text, Plaintiff States should bear the "burden of persuasion" to show adequate representation. *See* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909 (3d ed. 2008) ("it seems entirely clear that the effect of [the 1966 amendments to the Rule] is to shift the burden of persuasion" on adequacy of representation to the opponent).

represent 'the more narrow, parochial' economic and legal interests of their members," while Federal Defendants "must represent 'the broad public interest,' including institutional interests" of Congress and the President. Joint.Br.48–49 (quoting *Forest Conservation Council*, 66 F.3d at 1499). Joint Intervenors' ultimate interests and goals, therefore, are to vindicate their legal and economic interests, while Federal Defendants' interest and goal is to protect the prerogatives of the federal government and the interests of the public at large.

Joint Intervenors do not rely on "[v]ague fears and speculation" that these divergent interests may lead Federal Defendants to advance different arguments, States.Br.39—Federal Defendants have already done so even at this early stage, Joint.Br.47–48 (EPA "elected not to press" argument that waivers are rules in its motion to dismiss); States.Br.41 (acknowledging Federal Defendants "did not advance" the argument); *see also* 2-ER-74–75. The district court was simply wrong that the Joint Intervenors' "arguments mirror those of Federal Defendants" and "[n]one of Proposed Intervenors' arguments appear[s] unique to them." 1-ER-8–9.

Joint Intervenors, to be sure, agree that Federal Defendants have

26

not forfeited the argument that waivers are rules under the CRA at this stage of the litigation. Letter of Federal Defs., No. 25-8013, Dkt. 33.1; States.Br.41–42. But existing parties need not expressly disclaim an argument for the Court to conclude that representation may be inadequate. *Contra* States.Br.42. "[T]he relevant standard requires *merely* that an existing party cannot or will not 'make *any* reasonable argument' that the intervenor would make if it were a party." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 841 (9th Cir. 2022) (emphasis added and removed).

Plaintiff States elsewhere admit as much, recognizing that representation is inadequate "where [the] federal government failed to raise certain colorable arguments at summary judgment." States.Br.41 (discussing *W. Watersheds Project*). For purposes of intervention, there is no difference between failing to raise an argument at summary judgment or in a motion to dismiss—neither necessarily forefeits the argument. *See* Fed. R. Civ. P. 12(h)(2)(C) (failure to state a claim can be raised at trial). That Federal Defendants did not raise a colorable argument that Joint Intervenors would have in their motions to dismiss is therefore enough to satisfy the minimal burden for showing inadequacy of representation.

27

Plaintiff States have not disputed that Joint Intervenors' argument that waivers are rules is "colorable," *W. Watersheds Project*, 22 F.4th at 841, and have therefore forfeited that argument in this appeal.

Plaintiff States also suggest that Joint Intervenors must identify more than "a single argument" that Federal Defendants failed to make, States.Br.40, but cite no authority for that heightened burden. This Court's cases support the opposite rule: adequacy exists only "where it [is] clear that the existing parties were making *all* the arguments that applicants for intervention sought to make." *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (emphasis added). Identifying a single colorable argument not made by existing parties is enough. *W. Watersheds Project*, 22 F.4th at 841 (inadequacy where "an existing party cannot or will not 'make *any reasonable* argument' that the intervenor would make" (emphasis added)).

Moreover, where the movant asserts a "personal interest that does not belong to the general public," this Court has not required the movant to identify *even one* specific argument that the government may not make. Instead, this Court has recognized that such different interests inherently "may" give rise to differing litigation choices down the road.

*Forest Conservation Council*, 66 F.3d at 1499 (quotation omitted).

For example, in *Forest Conservation Council*, environmental groups sued the U.S. Forest Service, alleging procedural violations by the agency in managing national forest lands in Arizona. *Id.* at 1491. The State of Arizona and a local county moved to intervene, arguing that "the relief sought" by the groups—which included an injunction suspending forest management activities—would adversely affect them by increasing the likelihood of fires, spreading pests, and reducing funds they received from the sale of forest products and other fees. *Id.* at 1492.

This Court concluded that Arizona and the county had "satisfied the minimal showing [of inadequacy] required" without identifying a specific argument that the Forest Service would not make. *Id.* at 1498–99. Rather, it was enough that the "Forest Service is not charged with a duty to represent" the interests asserted by the State and county, but was "required to represent a broader view" of the federal government and general public, which had the potential to lead to divergent litigation choices. *Id.* at 1499. The same is true here. Federal Defendants have no duty to represent Joint Intervenors' particular economic and legal interests, which may lead to divergent litigation choices. Indeed, it already

29

has.

This case is therefore also unlike *Arakaki v. Cayetano*, 324 F.3d 1078, cited repeatedly by Plaintiff States. *See* States.Br.40, 43, 49. There, several native Hawaiians moved to intervene as defendants in a suit against the State of Hawaii challenging the constitutionality of state preferences for native Hawaiians. *Arakaki*, 324 F.3d at 1081. An association representing native-Hawaiian organizations and another individual had already been granted intervention as defendants. *Id.* This Court concluded the movants had not shown inadequate representation, noting that the State defendants had "specific statutory and constitutional obligations to protect" movants' interests and "a similarly situated intervenor" had already been granted intervention. *Id.* at 1087; *see also City of Los Angeles*, 288 F.3d at 401 (the presumption of adequacy arises when the government is "charged by law with representing the interests" of the movant (citation omitted)). The same is not true here: Federal Defendants have no legal obligation to protect Joint Intervenors' economic and legal interests, nor does the case include any "similarly situated" party.

30

## B.    Joint Intervenors Provide a Necessary Argument

Plaintiff States complain that Joint Intervenors "identify no reason why their purportedly unique views would influence the disposition" of the case. States.Br.48–49. But Rule 24(a)(2) doesn't require that intervenors bring a "unique" perspective; this Court considers "unique perspective[s]" when weighing whether a movant "would offer a necessary element to the proceeding that other parties would neglect." *W. Watersheds Project*, 22 F.4th at 842 (cleaned up). Joint Intervenors have identified a "necessary element" neglected by existing parties that they bring—a robust argument that EPA's waivers are rules under the CRA, which provides an alternate avenue for resolving the case or simplifying the issues. Joint.Br.47–48.

In any event, since no existing party is actually subject to or targeted by the state mandates made enforceable by EPA's waivers, Joint Intervenors *also* bring a unique perspective that could aid the district court in understanding, among other things, why the waivers are rules, since Joint Intervenors' members are among the "broad classes of unspecified individuals" whose rights are affected "after the [waiver] subsequently is applied." *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442,

31

448 (9th Cir. 1994) (defining "rulemaking").

Moreover, Joint Intervenors are uniquely affected by the district court's disposition of the case: Unlike any existing party, members of Joint Intervenors may be subject to civil penalties, product bans, or reduced consumer demand if the district court grants State Plaintiffs the relief they seek. *See, e.g.*, 2-ER-289 (California "reserves its right to enforce the regulations covered by the waivers targeted by the congressional resolutions in the event a court of law holds those resolutions invalid"). Joint Intervenors would therefore also point to very different irreparable harms than Federal Defendants to justify a stay pending appeal in the event of a judgment in Plaintiff States' favor.

Since Joint Intervenors have different interests and seek to press arguments for dismissal not raised by Federal Defendants, "amicus status is insufficient to protect [Joint Intervenors'] rights." *City of Los Angeles*, 288 F.3d at 400; *contra* States.Br.44, 49. Amicus status "does not allow [Joint Intervenors] to raise issues or arguments formally and gives it no right of appeal." *City of Los Angeles*, 288 F.3d at 400. Moreover, district courts need not, and often do not, "consider arguments raised only in amicus briefs." *United States v. Wahchumwah*, 710 F.3d 862, 868 n.2

(9th Cir. 2013); *Yim v. City of Seattle*, No. C18-0736, 2018 WL 6650794, at *1 (W.D. Wash. Dec. 19, 2018) (district courts "often decline to consider arguments raised only in *amici* briefing"). Participation as intervenors is therefore the only way Joint Intervenors can preserve their appellate rights and ensure their arguments are before the district court.[2]

## C. The Risk of Reversal by Federal Defendants Supports Inadequacy

The contentious history of EPA's waivers for California's electric-vehicle mandates gives rise to a non-speculative risk that Federal Defendants may reverse their position in this litigation, underscoring that Federal Defendants' representation "may be" inadequate. *Trbovich*, 404 U.S. at 538 n.10; *see* Joint.Br.51–53. Indeed, Plaintiff States pointed to EPA's reversals regarding the same "tiny fraction" of waiver decisions, States.Br.49, as evidence of inadequate representation when *they* sought to intervene to defend the waivers the Resolutions rescinded. *See* Mot. to Intervene, *AmFree*, No. 25-106, *supra*, at 11; Mot. to Intervene, *AmFree*, No. 25-89, *supra*, at 12. And although Plaintiff States now disclaim that

---

[2] Plaintiff States' claim that Joint Intervenors may, as parties, "improperly 'inject … unrelated issues'" into the case, States.Br.49, is belied by Joint Intervenors' proposed motions to dismiss, which introduce no collateral issues, *see* 2-ER-16–49, 2-ER-90–132.

EPA's past actions may be predictive of future ones, States.Br.50, they say the opposite in their Complaint, *see* 2-ER-162–64, ¶¶ 114–19 (alleging that EPA's submission of the waivers to Congress under the CRA means EPA will submit future waivers to Congress).

The same risk invoked by Plaintiff States when seeking to intervene in suits challenging the waivers is present here. That "thus far in this litigation, the government … has continued professionally and diligently to defend the" Resolutions does not preclude inadequacy. *Sagebrush Rebellion*, 713 F.2d at 528. Rather, as Plaintiff States have previously argued, the federal government's documented history of reversing its position on waivers analogous to those rescinded by the Resolutions shows that Federal Defendants' representation "may be" inadequate. Nor is it relevant that federal law would require the U.S. Department of Justice to report to Congress its decision to abandon defense of the Resolutions. States.Br.49–50 (citing 28 U.S.C. § 530D(a)(1)(B)(ii)). The Department of Justice sends many—sometimes more than a dozen—similar notices to Congress each year. *See* U.S. Dep't of Just., *Letters Submitted to Congress Pursuant to 28 U.S.C. § 530D*, https://perma.cc/66T7-P453 (updated Apr. 7, 2026). And Congress doesn't get a veto.

34

That Joint Intervenors might have an opportunity to move to intervene later is also no reason to deny intervention now. *Contra* States.Br.51. This Court's cases do not "support[] a complete denial of intervention based on the mere possibility that a future intervention application might be granted." *Sagebrush Rebellion*, 713 F.2d at 528. Rather, that intervention may be appropriate on appeal *supports* granting intervention now: "Appellant[s] should be permitted fully to participate in making the record on which [they] may have to rely on appeal." *Id.*

## III. The District Court Abused Its Discretion When Denying Permissive Intervention

The district court denied permissive intervention because it found that "allowing [Joint Intervenors] to intervene would needlessly complicate case management … *since their interests are already adequately represented by Federal Defendants*." 1-ER-10 (emphasis added). That was legal error. *See supra* Part II. Therefore, the district court abused its discretion, and this Court must remand for "re-analysis." *City of Los Angeles*, 288 F.3d at 404.

Plaintiff States assert that the district court separately analyzed the supposed case-management inefficiencies of allowing Joint Intervenors to participate *even if* they were inadequately represented, but that

35

argument is "easily dismissed." States.Br.52. The district court premised its analysis on its erroneous conclusion that the alleged inefficiencies of allowing permissive intervention would not be worthwhile "*since their interests are already adequately represented by Federal Defendants*." 1-ER-10 (emphasis added). Plaintiff States cannot replace the district court's balancing with their own, nor can this Court reweigh the discretionary factors *de novo* on appeal. *City of Los Angeles*, 288 F.3d at 404.

## CONCLUSION

For the foregoing reasons, the Court should hold that Joint Intervenors are entitled to intervene as of right and reverse, or, in the alternative, hold that the district court abused its discretion in denying permissive intervention and remand.

April 17, 2026

Respectfully Submitted,

/s/ *Rachel Levick*

Raymond B. Ludwiszewski
Rachel Levick
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
Tel.: (202) 955-8500
Fax: (202) 467-0539
rludwiszewski@gibsondunn.com
rlevick@gibsondunn.com

Sean Howell
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
 Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8355
Fax: (415) 801-7364
showell@gibsondunn.com

*Counsel for The Alliance for Automotive Innovation and The National Automobile Dealers Association*

/s/ *James R. Conde*

Michael Buschbacher
James R. Conde
Laura B. Ruppalt
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
 Suite 900
Washington, D.C. 20006
Tel.: (202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com

*Counsel for American Free Enterprise Chamber of Commerce, Illinois Corn Growers Association, Indiana Corn Growers Association, Iowa Corn Growers Association, Kansas Corn Growers Association, Kentucky Corn Growers Association, Michigan Corn Growers Association, Missouri Corn Growers Association, Nebraska Corn Growers Association, Tennessee Corn Growers Association, Texas Corn Producers, Wisconsin Corn Growers Association, and National Corn Growers Association*

37

*/s/ Katherine C. Yarger*

Katherine C. Yarger
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lkcfirm.com
Tel.: (512) 693-8350
Fax: (512) 727-4755

Steven P. Lehotsky
Michael B. Schon
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue NW
 Suite 700
Washington, DC 20001
steve@lkcfirm.com
mike@lkcfirm.com
Tel.: (512) 693-8350
Fax: (512) 727-4755

*Counsel for American Fuel &
Petrochemical Manufacturers,
American Petroleum Institute, and
the National Association of
Convenience Stores*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 26-88, 26-497, 26-525

I am the attorney or self-represented party.

**This brief contains** | 6,849 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ James R. Conde | **Date** | 4/17/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*